Vernon **CHAPPELL**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 15948.

United States Court of Appeals Ninth Circuit.

Aug. 11, 1959.

Wendell P. Kay, Kay & Buckalew, John R. Connolly, Anchorage, Alaska, for appellant.

William T. Plummer, U. S. Atty., George N. Hayes, George F. Boney, Asst. U. S. Attys., Anchorage, Alaska, for appellee.

Before POPE, STEPHENS and HAMLIN, Circuit Judges.

POPE, Circuit Judge.

By an indictment filed in the District Court for the District of Alaska, Third Judicial Division, appellant was charged in six counts with violation of § 641, Title 18 U.S.C.[1] Upon trial, a jury returned a verdict of guilty on Counts I and V; one count had been dismissed and appellant was found not guilty on the remaining three. Count I is as follows: "Sometime between the 1st day of August, 1956, and the 1st day of October, 1956, a more exact date being unknown to your Grand Jurors and therefore not alleged, at or near Anchorage, Third Judicial Division, District of Alaska, Vernon Chappell did wilfully, unlawfully and feloniously, knowingly convert to his own use the services and labor of Albert J. Cline a member of the military service of the United States, to-wit, an airman in the United States Air Force stationed at Elmendorf Air Force Base, Alaska, during duty hours for the said Vernon Chappell's own personal use and benefit, in that the said Vernon D. Chappell did cause the said Albert J. Cline to paint the interiors of three private dwelling establishments belonging to the said Vernon D. Chappell without reimbursing the United States for the value of such services and labor, such services and labor being a thing of value belonging to the United States and being of a value of more than One Hundred Dollars ($100.-00)."

The evidence in support of this Count was that at the time of the alleged offense, the appellant was a Master Sergeant in the United States Air Force, assigned to Headquarters Squadron Sec-

---

[1] "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof;

\* \* \* \* \*

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

tion, Alaskan Air Command, Elmendorf Air Force Base, Alaska. He was Mess Steward of the Headquarters Squadron. The appellee's brief sets forth the following summary of the Government's proof: "It was proved that for a period of about three weeks from August to September 1956, that an Airman Cline, who was under the supervision of the appellant, worked for the appellant during his normal duty hours. Cline painted several apartments owned by the appellant in Mountain View, Alaska. The overwhelming weight of the evidence proved that Cline performed none of his military duties during the period he was working for the appellant. The appellant put Cline on sick call to cover the time on one day so he could work for the appellant on duty hours. Cline did go on sick call and worked for Chappell instead."

Upon this appeal, insofar as the same affects the verdict as to Count I, the appellant assigns as error certain rulings of the court in respect to the admission of evidence, the failure to instruct the jury that Cline, who testified, was an accomplice of the defendant, and the failure of the court to require the production of certain statements made by witnesses to investigative officers of the Government. Other assignments of error in the instructions were made including the asserted error of the court in its instruction on criminal intent.

We find it unnecessary to consider these specifications of error for we are satisfied that Count I of the indictment has stated no offense. Although the point is not made in appellant's brief, the failure of this Count of the indictment, and of the evidence which followed it, to disclose any violation of this section of the Act, in our view constitutes plain error within the meaning of Rule 52(b), 18 U.S.C.[2]

A reference to § 641, (footnote 1, supra), discloses that it provides for the punishment of one who "knowingly converts to his use * * * any record, voucher, money, or thing of value of the United States * * * or any property made or being made under contract for the United States."

It is plain that there is no warrant in the language of this section to sustain the Government's attempt to treat the services and labor of Cline as a thing of value. § 641 was the product of the revision of Title 18 which was enacted June 25, 1948. As shown by the Reviser's note to this section, it was intended to consolidate §§ 82, 87, 100 and 101 of the earlier Title 18. The only changes made, it appears, were "changes necessary to effect the consolidation". It was in this revision that the words "converted to his use" were first imported in the sense here used.[3] As noted in Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, where the history of this section is discussed at length, "The word 'converts' does not appear in any of its predecessors." (Footnote 28, 342 U. S. at page 269, 72 S.Ct. at page 253).[4]

In the Morissette case the Court said: "We find no other purpose in the 1948 re-enactment than to collect from scattered sources crimes so kindred as to belong in one category." (342 U.S. at page 266, 72 S.Ct. at page 251) This was referred to by the Court as "stealing, larceny, and its variants and equivalents." Such offenses were never thought to be committed by one man making use of the services of another's servant without reimbursing the master.

It is undoubtedly true that in some senses the master's right to the services

---

2. "Rule 52. * * * (b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

3. The phrase did appear in the original § 101 but only in connection with the definition of the crime of receiving property embezzled, stolen or purloined by another person.

4. The same footnote, 342 U.S. at pages 266 to 269, 72 S.Ct. at pages 251 to 253, quotes at length the language of the predecessor sections.

of his servant may be regarded as property or as a thing of value, but the utilization of such services by a stranger has never been known to be comprehended within the definition of statutes dealing with larceny, theft, or their "variants and equivalents." Thus Blackstone defines larceny as follows: "Larceny is the felonious taking and carrying away of the personal goods of another." Burdick, Law of Crimes, § 503: "At common law, personal property in order to be subject to larceny must be corporeal or tangible. Mere credits are not subject of larceny, or mere incorporeal property rights like franchises and licenses, as distinguished from physical property."

The question then is whether the revision of Title 18 in inserting in § 641 the words "whoever * * * converts to his use, or the use of another * * * any * * * thing of value of the United States * * *." was intended so to enlarge the original import of the revised sections as to bring within the prohibition of the statute acts like those charged to this defendant which involved the improper or unauthorized use of the services of Airman Cline.

The mere importation of the words "converts to his use" cannot be held to have brought about that result. In the Morissette case the Court dealt with a somewhat similar question raised by the Government's contention that in using these words Congress imported a new idea into the section, namely, that to "convert" was a crime without the element of intent, thus differing from the concept prevailing in the cases of stealing, larceny, or purloining. Said the Court: "If one crime without intent has been smuggled into a section whose dominant offenses do require intent, it was put in ill-fitting and compromising company." (342 U.S. at page 269, 72 S.Ct. at page 253) It added: (footnote

mentioned above) "The 1948 Revision was not intended to create new crimes but to recodify those then in existence." We cannot believe that in importing the new words "knowingly converts" Congress meant that the subject of the conversion should be of any different type than the subject of larceny or that it could be other than personal goods.

■ The problem now before us is even simpler than that which was met in the Morissette case, for the word "convert" has a long history in the law, throughout which it has always been used in connection with interferences with goods or personal chattels. As stated in the Morissette case, (342 U.S. at page 263, 72 S.Ct. at page 250) "And where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them."

As Congress must have known, the words "converts" and "conversion" really have their origin in the law of torts. The terms imply a dealing with goods or personal chattels. Thus Black defines conversion as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights." Black Law Dictionary, Third Edition.[5] The common concept of conversion or what may be converted is stated in Harper & James, The Law of Torts, § 2.13, as limited to "any tangible chattel".[6] An able discussion of the

---

5. Substantially the same definition is found in Bouv.Law Dict., Rawle's Third Revision.

6. "Any tangible chattel may be the subject of conversion. . . . Intangible property relations may not be converted except in the case of an action against a corporation for conversion of shares and in those situations in which the owner of a document is, as such, entitled to the advantages of the intangible relation."

proposition here considered, namely, that intangible property relations may not be converted, as that term is commonly used, is found in Olschewski v. Hudson, 87 Cal.App. 282, 262 P. 43, 45. In that case the successor of a laundry company brought suit against the executor of the laundry company's agent to recover damages for the alleged conversion of a laundry route asserted to belong to the company and which the agent had wrongfully attempted to sell. Holding that the action would not lie, and discussing at length the concept behind the words "convert" and "conversion" the court concluded: "From the foregoing authorities it appears that the action of trover or conversion lies only for the wrongful appropriation of goods, chattels, or personal property which is specific enough to be identified, and not to such indefinite, intangible, and uncertain property rights as the mere good will of a business, or trade secrets (Roystone v. John H. Woodbury, 67 Misc. 265, 122 N.Y.S. 444), or a newspaper route (Boehm v. Spreckels, 183 Cal. 239, 191 P. 5), or a licensed market stall for transacting trade (Meier v. Wilkens, 15 App.Div. 97, 44 N.Y.S. 274)." [262 P. 46.]

It is plain that such is the ordinary sense of the word "convert"; and that in using the words "converts to his use" in this section, Congress did not envision any such revolutionary concept as that which underlies the attempted prosecution under Count I. We construe a section defining a crime. As such it must be strictly construed. It cannot be enlarged by analogy or expanded beyond the plain meaning of the words used. Cf. Haili v. United States, 9 Cir., 260 F.2d 744.

We note that in Burnett v. United States, 6 Cir., 222 F.2d 426, the court took it for granted that an army officer could be found guilty of an offense under this section by converting to his own use the services and labor of two employees of the United States in constructing a chest of drawers for his personal use. The question here before us was neither raised nor discussed in that case. To the extent that its decision implies a view that such constitutes a crime under that section, we disagree with it.

Accordingly we hold that Count I of this indictment did not state an offense under this section and that the judgment, insofar as it is based upon the verdict under Count I, must be reversed and that Count ordered dismissed.

This brings us to a consideration of the judgment based upon the conviction under Count V of the indictment which reads as follows: "Title 18, § 641, U.S.C.—Sometime between the 1st day of June, 1956, and the 1st day of September, 1956, a more exact date being unknown to your Grand Jurors and therefore not alleged, at or near Anchorage, Third Judicial Division, District of Alaska, Vernon Chappell did wilfully, unlawfully and feloniously, knowingly convert to his own use things of value of the United States Air Force, Department of Defense, of a value of more than One Hundred Dollars ($100.00), to-wit, two coffee tables, one formica drop-leaf table and two matching chairs, one frameless mirror, one complete antique spice bedroom suite, two floor lamps and one easy chair with flowered design."

The appellee summarizes the evidence under Count V as follows: "The evidence demonstrated that the appellant had the furniture set out in Count V of the Indictment and that this furniture was of an unauthorized type for off-base use. There was no evidence except the appellant's testimony that the furniture was lawfully issued to him."

Upon his conviction under Count I, appellant was sentenced to imprisonment for three years. The sentence was suspended and the defendant placed on probation. On his conviction under Count V, appellant was fined $1000. The jury found that the value of the property listed in Count V was $86.80. Under the statute this made the offense a misdemeanor. Title 18 § 1. The court imposed the maximum fine but no imprisonment under this count.

What we think is the necessary disposition of this part of the case will be disclosed by discussion of appellant's complaint with respect to the court's instruction upon criminal intent. That instruction was as follows: "Criminal intent is a necessary ingredient of the crime charged in the indictment, and before a verdict of guilty may be rendered you must find from the evidence, beyond a reasonable doubt, that the defendant intended to commit the offense against the United States charged in the indictment. In this connection, you are instructed that every person is presumed to intend the natural consequences of his own voluntary and deliberate acts. One who voluntarily and deliberately performs an act which, from our common experience, is known to produce a particular result, may be presumed to have anticipated and intended that result."

The question of the appellant's intent in possessing and using the furniture referred to in this count of the indictment was very much in issue in the case. While it was admitted that appellant had the items of furniture in his possession, he testified that the furniture had been issued to him by the proper Air Force agent and he understood and thought that he had a right to use it.

The evidence showed that enlisted personnel in the position of the appellant were regularly issued Government furniture from the base warehouse for use by themselves and their families. An attempt was made on the part of the Government to show that new furniture, such as that listed in Count V of the indictment, could not be issued for off-base use under the Air Force regulations.

No such regulations were produced, although there was testimony to the effect that it was the policy of the base commander not to permit new furniture such as this to be issued for off-base use such as that which the appellant was making of it. The evidence disclosed that when an inquiry into appellant's possession of this furniture was begun, appellant made no effort to conceal his possession or to interfere with any investigation of the furniture in his possession; he never denied that it was Government property, made no effort to retain it, and made no claim to it as his own. Under these circumstances it is clear that the giving of the instruction quoted above, in which after referring to the subject of criminal intent, the court said that "every person is presumed to intend the consequences of his own voluntary and deliberate acts" was likely to mislead the jury. In Bloch v. United States, 9 Cir., 221 F.2d 786, 788, we said of a similar instruction that it was error which was "fundamental and goes to the very essence of the case." Precisely applicable here is the language of the Supreme Court in Morissette v. United States, supra, where the court had under consideration the same § 641 which we deal with here. Said the Court (342 U.S. at page 275, 72 S.Ct. at page 256): "We think presumptive intent has no place in this case. A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating presumptions are not to be improvised by the judiciary."

Without seriously attempting to defend the use of the language referred to in the quoted instruction, the Government asserts that when the instructions as a whole are examined, they can be sustained, citing Bateman v. United States, 9 Cir., 212 F.2d 61, and Legatos v. United States, 9 Cir., 222 F.2d 678. The difficulty with that approach is that

the instruction quoted here is substantially the only guide which the jury had before it in its effort to decide this all-important question of fact. Applicable here is what we said in denying a rehearing in the Bloch case, 9 Cir., 223 F. 2d 297, 298: " * * * the language of the court criticized was in and of itself erroneous, and in this particular case its prejudicial effect was not cured by the other instructions given." In Bateman and Legatos, as we there noted, the problem was merely whether other instructions on the same subject offset the error in the one complained of, or rendered it non-prejudicial. Such is not the situation here.[7]

It follows, therefore, that the judgment, insofar as it imposes a sentence under Count V of the indictment, must be reversed and the cause remanded for a new trial.

Because of this disposition of the case, it is not necessary for us to consider here other specifications of error made by the appellant. Thus appellant has assigned error in the refusal of the court to require that appellant be furnished certain written statements of the expected testimony of witnesses interviewed by federal officers prior to the trial. The demand for these statements was made at the trial in reliance upon the decision of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103.

In view of the fact that the Supreme Court has now passed upon the meaning and proper application of the so-called "Jencks Act," under which questions of this sort would have to be determined upon a retrial of this case, see Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 and Rosenberg v.

United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304, there is no occasion for us to lay down any further guides for the determination of such questions upon a retrial.

The judgment is reversed with directions to dismiss Count I of the indictment, and to grant appellant a new trial upon Count V thereof.

---

7. The court gave another instruction as follows: "You are hereby instructed that the term 'knowingly converts' means that the defendant knew that the property or thing of value which he converted for his own benefit and use belonged to another—in this case, the United States —and yet knowingly, through such conversion, deprived the Government of its use and benefit."

Of course appellant knew that the furniture belonged to the United States; he knew also that when he used it the United States was in a sense deprived of its use. Yet if he believed it was properly issued to him he was not guilty. If anything, this further instruction would but tend to add to the jury's misunderstanding.