**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Dee Francis SHEKER,**
**Defendant-Appellant.**

**No. 79–1618.**

United States Court of Appeals,
Ninth Circuit.

May 12, 1980.

Martha J. Holden, Sacramento, Cal., on brief; Arthur W. Ruthenbeck, Sacramento, Cal., for defendant-appellant.

Malcolm S. Segal, Asst. U. S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before ANDERSON and SKOPIL, Circuit Judges, and CAMPBELL, District Judge.*

PER CURIAM:

James Sheker challenges his conviction for impersonating an agent of the Internal Revenue Service to obtain "a thing of value", in violation of 18 U.S.C. § 912. The "thing of value" sought was the whereabouts of a witness against Sheker in a state prosecution. Sheker raises three claims in this appeal: (1) That the information sought was not a "thing of value" under 18 U.S.C. § 912; (2) that his counsel failed to provide him with effective assistance at trial; and (3) that the prejudicial effect of witness Stone's testimony outweighed its probative value and should not have been received. We affirm.

## I. *Facts*

On April 19, 1979, just before closing time, Sheker entered Hoeflich's appliance store in Redding, California. Dressed in business clothes, he approached Mrs. Hoeflich and asked for Robert Stokes, a one-time store employee. Mrs. Hoeflich is hard of hearing but heard Sheker say he was attempting to locate Stokes because Stokes had recently inherited a large sum, and "we cannot find any record of it, any bank that it has been deposited in." She was left with the impression that Sheker was an agent of the Internal Revenue Service. When she asked him for identification, Sheker handed her a card with his name, "some kind of association", and "Washington, D. C." on it. She did not actually hear him say he was from the I.R.S.

Kelly Ciulla, a store employee, overheard parts of the conversation. He heard Sheker say he was from the I.R.S., was tracing a large sum of money, and was trying to

---

* Hon. William J. Campbell, Senior District Judge, Northern District of Illinois.

locate Stokes for that reason. Ciulla told Sheker the name of the town Stokes was living in. As Sheker drove away, Ciulla took down his automobile's license plate number.

Marlene Stone had picked Sheker up at the San Francisco airport a few days earlier. Sheker, then "rather upset", told her that Stokes and his wife had turned him in to the police, and "he felt that they should be made to pay back what they had taken from him. Which was time, maybe, out of his life." He asked to borrow Stone's gun, said he was going to Los Angeles and then Redding:

> "He was going to make them—they would pay back, how, I don't know. For what they had done to him."

The next day Stone called Stokes to tell him of Sheker's intention.

On May 9, 1979 Sheker was indicted on one count of impersonating a federal officer, in violation of 18 U.S.C. § 912.[1]

Before trial the parties stipulated that Stokes' whereabouts was a "thing of value" under 18 U.S.C. § 912 and that Sheker was not and had never been an agent of the Internal Revenue Service. On July 18, 1979 a jury found Sheker guilty.

## II. Sufficiency of the Indictment

 The indictment adequately charged Sheker with impersonating a federal officer to obtain a thing of value, within the meaning of 18 U.S.C. § 912.[2] *See U. S. v. Mitman*, 459 F.2d 451 (9th Cir.), *cert. den.* 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 111 (1972). We do not embrace the government's sweeping position that 18 U.S.C. 912 extends to anything that has value to the defendant. Such a broad reading of "val-

ue" negates any limitation the word could imply. By the same token, we cannot accept Sheker's suggestion that 18 U.S.C. 912 covers only things having commercial value. Information can be a thing of value. *Whaley v. U. S.*, 324 F.2d 356 (9th Cir. 1963). In normal English usage commercial worth is not the exclusive measure of value. For instance, state secrets might trade hands without cash consideration. Information obtained for political advantage might have value apart from its worth in dollars. In each case the information sought would have value to others, in addition to the seeker. Such is the case here. Stokes would see value in keeping his whereabouts unknown to Sheker. The criminal justice system, concerned with the safety of witnesses, has a similar interest. Because the information sought had value in these broader senses, we hold the indictment sufficient.

In view of this conclusion, we also hold that the challenged language in the indictment ("concerning the location of a witness against him") was not prejudicial surplusage. The quoted words were properly included to explain why the information sought was valuable. *See generally, U. S. v. Root*, 366 F.2d 377, 381 (9th Cir.), *cert. den.* 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1966).

 The language of the statute is not sufficiently ambiguous to call into play the rule of lenity. As the Supreme Court said in *Bell v. U. S.*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955):

> "[L]anguage used in criminal statutes should not be read with the saving grace of common sense with which other enact-

---

**1.** "Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency, or officer thereof, and acts as such or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined not more than $1,000 or imprisoned not more than three years, or both." 18 U.S.C. § 912.

**2.** The indictment read: "The Grand Jury charges that JAMES DEE FRANCIS SHEKER,

JR., defendant herein, on or about April 19, 1979, in the City of Redding, County of Shasta, State and Eastern District of California, did falsely pretend and assume to be an employee of the United States acting under the authority thereof, that is an agent of the Internal Revenue Service, and in such pretended character, did demand information concerning the location of a witness against him in a criminal case pending in a State court."

ments, not cast in technical language, are to be read."

We find the statute unambiguous.

### III. *Ineffective Assistance of Counsel*

■ We find no serious derelictions on the part of Sheker's trial counsel. *See Cooper v. Fitzharris*, 586 F.2d 1325, 1330 (9th Cir. 1978) (*en banc*). Counsel's trial strategy was to narrow the case to the question of impersonation, eliminating any evidence relevant to motive. By stipulating that the information sought was a "thing of value", counsel took a long step toward that objective.

Sheker also points to trial counsel's failure to obtain a definitive ruling from the trial judge as to the admissibility of Sheker's alleged previous CIA impersonations. If the trial judge had ruled admissible the prior incidents, Sheker could have sought review of that ruling. *U. S. v. Cook*, 608 F.2d 1175 (9th Cir. 1979) (*en banc*). However, Sheker's supposition that trial counsel could have forced the trial judge to make an advance ruling on admissibility is speculative. *See U. S. v. Tercero*, (9th Cir. No. 78–1995, Jan. 18, 1980).

We do not minimize Sheker's interest in testifying in his own behalf. *See U. S. v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *U. S. v. Bentvena*, 319 F.2d 916 (2nd Cir. 1963). On this record we cannot say that the possible admission of this impeachment evidence was the sole, or even a principal, reason Sheker didn't testify. Given the related state charges against Sheker for murder and kidnapping, and the prosecution's interest in probing Sheker's motives for impersonation, testifying would have been risky at best. In this setting it is reasonable to assume trial counsel did not seek a definitive ruling because he thought it only marginally relevant to the decision whether to testify. There were so many other reasons that it is unreasonable to single out this one. We find no prejudice to Sheker from trial counsel's conduct.

### IV. *Admission of Stone's Testimony*

■ We find no error in admitting Stone's testimony. Our review is only to determine whether the trial court abused its discretion in admitting the testimony. *U. S. v. Rocha*, 553 F.2d 615, 616 (9th Cir. 1977); *U. S. v. Watkins*, 600 F.2d 201, 205 (9th Cir. 1979). The testimony was relevant to Sheker's motive. *Compare Reed v. U. S.*, 364 F.2d 630, 633 (9th Cir.), *cert. den.* 386 U.S. 918, 87 S.Ct. 873, 17 L.Ed.2d 789 (1967); *Metheany v. United States*, 390 F.2d 559, 563 (9th Cir.), *cert. denied* 393 U.S. 824, 89 S.Ct. 81, 21 L.Ed.2d 94 (1968); *Theobald v. U. S.*, 371 F.2d 769, 770 (9th Cir. 1967). The only question is whether the testimony's prejudicial effects substantially outweigh its probative value. Fed.Rules of Evid. 403. Sheker denied the impersonation occurred. The government's case hinged on the testimony of a single witness, Ciulla. The government therefore had a strong need for evidence showing Sheker's motive, and the strength of that motive. *See U. S. v. Spletzer*, 535 F.2d 950, 956 (5th Cir. 1976). The balance is close, but we cannot say that the trial court abused its discretion in ruling that the probative value of the testimony outweighed its prejudicial effect. *Compare U. S. v. O'Brien*, 601 F.2d 1067, 1070 (9th Cir. 1979); *U. S. v. Tsinnijinnie*, 601 F.2d 1035, 1040 (9th Cir. 1979); *U. S. v. Moreno-Nunez*, 595 F.2d 1186, 1188 (9th Cir. 1979); *Chandler v. U. S.*, 378 F.2d 906, 908 (9th Cir. 1967). As we have said elsewhere:

> "The evidence was, of course, prejudicial to the appellants, but it was highly relevant and it was introduced for a proper purpose. There was no error in its admission." *Reed v. U. S., supra*, 364 F.2d at 633.

The judgment is AFFIRMED.