UNITED STATES of America,
Plaintiff-Appellant,

v.

Sol C. SCHWARTZ, Raymond F. Lane,
Frank C. Marolda, and Abe Chapman,
Defendants-Appellees.

Nos. 83–1276, 84–1102.

United States Court of Appeals,
Ninth Circuit.

No. 83–1276 Argued April 11, 1984.

Submitted March 12, 1985.

No. 84–1102 Argued March 12, 1985.

Submitted April 2, 1985.

Decided March 14, 1986.

Joseph P. Russoniello, Sanford Svetcov, Nancy Simpson, William R. Martin, San Francisco, Cal., for plaintiff-appellant.

Jack W. Londen, James J. Brosnahan, Karen Snell, Morrison & Foerster, San Francisco, Cal., for S. Schwartz.

A.J. Kramer, Asst. Federal Public Defender, San Francisco, Cal., for R. Lane.

Manton L. Selby, San Francisco, Cal., for A. Chapman.

Alan J. Ruby, Morgan, Ruby, Teter, Schofield, Franich, Bouchier & Fredkin, San Jose, Cal., for F. Marolda.

Before DUNIWAY and ANDERSON, Circuit Judges, and COUGHENOUR,* District Judge.

## ON PETITION FOR REHEARING— GRANTED IN PART, DENIED IN PART

J. BLAINE ANDERSON, Circuit Judge:

It is ordered that the petition for rehearing is DENIED IN PART and GRANTED IN PART.

The opinion filed June 18, 1985 (9th Cir., 763 F.2d 1054) is withdrawn.

In these consolidated appeals, the United States challenges the district court's dismissal of a total of fifteen counts, which were originally brought against the defendants under one indictment. We reverse as to the counts involved in Appeal No. 83–1276 and we dismiss Appeal No. 84–1102 because we find it is barred by the Double Jeopardy Clause.

## I. BACKGROUND

Defendant Marolda was president of Local 19, the San Jose affiliate of the Hotel and Restaurant Employees Union (HREU). Defendant Lane was secretary-treasurer of HREU Local 28 in Oakland-Contra Costa. Both men also served as trustees of their union's health and welfare and pension benefit plans. In 1978, Marolda was convicted and sentenced for embezzling union funds.[1] In 1979, Lane pled guilty to one count of embezzling union funds.

The government alleged, and sought to prove at trial, that due to these criminal convictions, Marolda and Lane were in danger of losing their union offices. In an effort to salvage the situation, the government alleged, Lane and Marolda agreed to merge their two locals, thereby eliminating election challenges the two were facing. One of the two was allegedly to remain in control of the merged union in order to ensure the financial health of both men.

---

* The Honorable John C. Coughenour, United States District Judge for the Western District of Washington, sitting by designation.

1. Marolda's conviction was reversed by this court on appeal. *United States v. Marolda,* 615 F.2d 867 (9th Cir.1980).

A merger required the approval of the HREU International president, however, and the president in this case proved to be reluctant. In order to persuade the International president to approve the merger, Lane allegedly enlisted the help of defendants Schwartz and Chapman, executives affiliated with Amalgamated Insurance Agency of Chicago. Lane allegedly hoped that the Chicago defendants would be able to exert a certain amount of favorable influence over the International president. In return for this favorable influence, claimed the government, Lane and Marolda agreed to reopen bidding on their respective locals' benefit plans and eventually award the administration of those plans to the Chicago defendants.

From this alleged factual scenario, a federal grand jury indicted the defendants on fifteen counts. Count One alleged a conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 371, 1343. Counts Two through Twelve charged defendants with separate criminal acts of wire fraud, in violation of 18 U.S.C. § 1343. Counts Thirteen and Fourteen alleged violations of 18 U.S.C. § 1954 by accepting or soliciting a *thing of value* with the intent to influence benefit plan trustees. Count Fifteen charged Lane and Marolda with conspiracy to violate 29 U.S.C. § 501(c) by allegedly arranging for a life salary for Marolda.

On October 21, 1983, the district court dismissed Counts Thirteen and Fourteen, finding that the conduct alleged in the indictment is not criminalized by section 1954. These two counts were severed for purposes of appeal, and the district court refused to stay the February 21, 1984 trial date on the remaining counts. The government's appeal of the dismissal of Counts Thirteen and Fourteen proceeded to oral argument before this court (No. 83–1276).

Meanwhile, defendants' jury trial on the remainder of the indictment began as scheduled. At the close of the government's case, the district court granted defendant's motion for acquittal on all remaining counts.[2] The government appeals this judgment as well (No. 84–1102). We consolidated the cases for consideration on appeal.

## II. DISCUSSION

■ The questions involved in this appeal, whether or not the Double Jeopardy Clause bars appeal and the statutory construction of section 1954, are legal questions. As such, we are permitted to review them freely under the *de novo* standard of review. *United States v. McConney*, 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied*, — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### A. *No. 84–1102*

Defendants Lane and Marolda were, in addition to officers of their respective locals, trustees of a total of six benefit plans: (1) Local 28 Oakland Welfare Fund; (2) Local 28 Oakland Pension Fund; (3) Local 28 Contra Costa Welfare Fund; (4) Local 28 Contra Costa Pension Fund; (5) Local 19 Welfare Fund; and (6) Local 19 Pension Fund.

Counts One through Twelve of the indictment alleged three common objectives of the scheme to defraud. The first objective was to deprive the two locals of the loyal and honest services of Lane and Marolda in the performance of their duties as officers. The second alleged objective was to deprive the six benefit plans of the loyal and honest services of Lane and Marolda in their roles as trustees. The third objective charged was to obtain money and property from the two locals and their respective benefit plans by false and fraudulent pretenses.

The defense moved pretrial to dismiss the indictment on grounds of duplicity and

---

**2.** Shortly before trial, defendant Chapman pled guilty to the conspiracy count as part of a plea agreement. As a result, Chapman was not tried with the other defendants.

After the trial ended in favor of the other defendants, Chapman moved to withdraw his guilty plea, pursuant to Fed.R.Crim.P. 32(d), and to dismiss the case. The district court granted the motion. This puts Chapman's appeal in a different posture than that of the other defendants, as discussed *infra*.

vagueness. The district court denied the motion, relying on *United States v. Mastelotto*, 717 F.2d 1238 (9th Cir.1983). The court reasoned that the transactions alleged in the wire fraud counts were "within the conceivable contemplation of a greedy mind" and, therefore, could be viewed as one unitary scheme to defraud. The court went on to caution the government, however, that under *Mastelotto* it would be required to prove the entire unitary scheme or, in other words, it must prove all three objectives as to each benefit plan and local as alleged in the indictment.

Subsequently, when the government finished its case-in-chief, the district court granted defendants' motion for judgment of acquittal, pursuant to Fed.R.Crim.P. 29. Citing *Mastelotto* and *United States v. Miller*, 715 F.2d 1360 (1983), *modified*, 728 F.2d 1269 (9th Cir.1984), *rev'd*, — U.S. ——, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), the court ruled that there was a fatal variance because the government failed to present sufficient proof as to a number of the benefit plans as alleged in Counts One through Twelve, and, therefore, had not proven all of the objects of the unitary fraud scheme.[3] The government now appeals, arguing that the district court's actions amounted to a dismissal rather than acquittal, thereby allowing this appeal and eventually a new trial on a narrower indictment.

■ Appellate jurisdiction over government appeals in criminal cases is authorized by 18 U.S.C. § 3731, except when the Double Jeopardy Clause bars further prosecution. It is settled law under the Double Jeopardy Clause that "[a] judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed...." *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65, 74 (1978) (footnote omitted). In determining whether an appeal is barred by the Clause, the Supreme Court has instructed that the label applied by the dis-

trict court, whether "acquittal" or "dismissal," is not dispositive. "The trial judge's characterization of his own action cannot control the classification of the action." *Scott*, 437 U.S. at 96, 98 S.Ct. at 2196, 57 L.Ed.2d at 77. Thus, applying substance over form to a district court's judgment of acquittal, appeal is barred if the court "evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572, 651, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977).

The crucial inquiry before this court, therefore, is to determine whether the district court's judgment was a true acquittal as evidenced by a legal evaluation of the government's case. For its part, the government readily admits that certain parts of the indictment were specifically dismissed for lack of evidence, thereby amounting to an acquittal as to those parts. The government does not appeal those specific findings. The crux of the government's argument, however, is that despite the label of "acquittal" used by the court, the judgment on Counts One through Twelve was in fact partly "a dismissal" based on the ruling of law that there was an impermissible variance. The government opines, therefore, that it is not barred from appealing or seeking a retrial on the individual parts of the scheme which the district court did not specifically reject for lack of sufficient evidence.

In most cases, the government's argument would be well taken. This case, however, involved an indictment for wire fraud. As such, the district court correctly recognized *Mastelotto* and *Miller* as the governing circuit authority. Together, *Mastelotto* and *Miller* established a special framework for consideration of wire fraud indictments in this circuit. The rule of *Miller*, based on the Fifth Amendment's grand jury guarantee, was that a conviction could not stand where the trial proof showed a fraudulent scheme much narrower than, even though

---

**3.** The court also ordered judgment of acquittal as to the original Count Fifteen (renumbered as Count Thirteen for trial) on the specific grounds of lack of sufficient evidence.

wholly included within, the scheme indicted by the grand jury. The reasoning was that a grand jury's willingness to indict someone for a broad wire fraud scheme does not establish that the same grand jury would have indicted the person for a substantially narrower scheme.

The district court recognized this peculiar rule and, from the beginning, exhibited an understanding of it as well as an intention to hold the government to its directive. The government was specifically warned before trial that it was required to comply. When the government did not comply, the court explained to the jury, in terms of the Ninth Circuit case law, why it was granting defendants' motion for acquittal. The court explained that in light of the lack of evidence on several elements of the broad scheme, "a reasonable juror could not find beyond reasonable doubt that the defendants had participated in a unitary scheme to defraud as charged in the indictment." Thereafter, the court entered an order granting judgment of acquittal.

■ The actions and words of the district court clearly show that it evaluated the government's evidence under the prevailing legal standards and determined that that evidence was legally insufficient to sustain a wire fraud conviction as indicted. This can only amount to an acquittal on all thirteen counts that went to trial.

■ Interestingly, the Supreme Court granted certiorari in *Miller* after the district court entered its judgment, and very recently issued a unanimous opinion reversing this circuit. — U.S. —, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). Nevertheless, the reversal of *Miller* is inconsequential to this case. Inasmuch as we find the judgment below to be a true acquittal, the Double Jeopardy Clause bars appeal even if the district court based the acquittal on an erroneous interpretation of governing legal principles or upon legal principles which are themselves subsequently overturned. *Scott*, 437 U.S. at 98, 98 S.Ct. at 2197, 57 L.Ed.2d at 79; *Sanabria v. United States*, 437 U.S. 54, 64, 98 S.Ct. 2170, 2178, 57 L.Ed.2d 43, 54 (1978).

Consequently, because the district court's judgment in favor of defendants Schwartz, Lane and Marolda was an acquittal, the appeal in No. 84–1102 as to those three defendants is barred by the Double Jeopardy Clause and must be dismissed. As noted previously, however, defendant Chapman's situation is different, by virtue of the fact that he pled guilty and did not go to trial. The district court allowed Chapman to withdraw his guilty plea and then dismissed the indictment against him.

■ The district court has the discretion under Fed.R.Crim.P. 32(d) to allow withdrawal of a guilty plea for "fair and just reason." *United States v. Castello*, 724 F.2d 813, 814 (9th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 3540, 82 L.Ed.2d 844 (1984). There is no question that the district court's sole reason for permitting Chapman to withdraw his plea was the fact that his codefendants had been acquitted of the same conspiracy charge because of the government's lack of sufficient evidence. We are satisfied that the district court did not abuse its discretion in permitting the withdrawal under the circumstances of this case. Thus, we will not reinstate Chapman's criminal conviction.

■ This does not mean, however, that the government's appeal of the indictment dismissal is barred by the Double Jeopardy Clause in the same manner as the other defendants. The Supreme Court held in *Scott* that "an appeal is not barred simply because a ruling in favor of a defendant 'is based upon facts outside the face of the indictment,' ... or because it 'is granted on the ground ... that the defendant simply cannot be convicted of the offense charged.'" 437 U.S. at 96–97, 98 S.Ct. at 2197, 57 L.Ed.2d at 78 (quoting *United States v. Wilson*, 420 U.S. 332, 348, 95 S.Ct. 1013, 1024, 43 L.Ed.2d 232 (1975) and *Lee v. United States*, 432 U.S. 23, 30, 97 S.Ct. 2141, 2145, 53 L.Ed.2d 80 (1977)). If the defendant deliberately and successfully avoids submission of the indictment to the trier of fact by persuading the trial court to dismiss it on a basis which does not

depend on guilt or innocence, then he "suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal ..." *Id.*, 437 U.S. at 99, 98 S.Ct. at 2198, 57 L.Ed.2d at 79.

■ There has been no factual determination of guilt or innocence in Chapman's case. Chapman was not tried on the indictment. It is irrelevant that Chapman would have, had he not pled guilty, likely been tried along with the other three defendants, and acquitted with them as well. Before a trier of fact could hear evidence in a trial against him, Chapman requested that the district court dismiss the indictment against him. In doing so, the district court ruled as a matter of law that Chapman could not be convicted under the indictment because of the rule in *Miller.* In our opinion, this was a legal ruling to dismiss on a basis which did not depend on Chapman's guilt or innocence. Thus, the Double Jeopardy Clause does not bar the government's appeal of Chapman's dismissal. Nevertheless, we affirm the district court's legal ruling to dismiss the indictment under the rule of *Miller.* We are confident that the district court made the correct legal determination based on this circuit's authority at that time.

B. *No. 83–1276*

The government also appeals the district court's pretrial dismissal of Counts Thirteen and Fourteen of the indictment, which charged defendants with violating 18 U.S.C. § 1954. Section 1954 prohibits the offer, acceptance, or solicitation of "any fee, kickback, commission, gift, loan, money, or *thing of value*" because of or with intent to influence the actions or duties of union benefit plan trustees (emphasis added). Counts Thirteen and Fourteen alleged that defendants Schwartz and Chapman agreed to give, and defendants Lane and Marolda agreed to receive, "assistance in arranging for the merger of Local 19 and Local 28, as well as other services," as a *thing of value* in exchange for influencing the actions of Lane and Marolda in their positions as benefit plan trustees.

Applying the rule of lenity, the district court held that the reference to *thing of value* in section 1954 cannot be read to encompass assistance in arranging the merger of two unions and "other services." Therefore, because the court decided the defendants' alleged actions were not criminalized by the statute, the two counts were dismissed and severed so that an immediate appeal could be taken.

■ The question of first impression left for this court to decide, therefore, is whether as a matter of law, the statutory scope of *thing of value* is broad enough to include the intangible of providing assistance in arranging a merger. In analyzing this question, the allegations of the indictment are presumed to be true. *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir.1982), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983).

■ To determine the scope of section 1954, this court looks first to the language of the statute. If that language is unambiguous, and if Congress has not clearly expressed a contrary intent, we will regard that language as conclusive. *Russello v. United States*, 464 U.S. 16, 17, 104 S.Ct. 296, 297, 78 L.Ed.2d 17, 20 (1983). Furthermore, when a term such as *thing of value* has not been specifically defined in the statute, we will assume that the ordinary meaning of the words express the legislative purpose behind them. *Id.*

The defendants urge that *thing of value* should be limited to tangible things with ascertainable monetary value. Ordinarily, however, the measure of value is not limited to commercial or monetary worth. We have recognized a common, broader interpretation of value. In *United States v. Sheker*, we held that information can be a *thing of value:*

> For instance, state secrets might trade hands without cash consideration. Information obtained for political advantage might have value apart from its worth in dollars. In each case the information sought would have value to others, in addition to the seeker.

618 F.2d 607, 609 (9th Cir.1980) (holding information regarding the whereabouts of a witness was a *thing of value* under 18 U.S.C. § 912). Indeed, that value commonly extends in scope to include intangibles has been the conclusion of various courts when faced with the task of construing criminal statutes that contain the term *thing of value.*

In *United States v. Croft,* 750 F.2d 1354 (7th Cir.1984), the defendant was convicted of converting to his own use a *thing of value* of the government, in violation of 18 U.S.C. § 641. The *thing of value* at issue was the labor of a government employee, whose research work product was appropriated by the defendant for private gain. The Seventh Circuit squarely held that intangible services do constitute a *thing of value.* 750 F.2d at 1361–1362.

The Second Circuit in *United States v. Girard,* 601 F.2d 69 (2d Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979), held that the sale of information is a *thing of value,* reasoning that "[t]hese words are found in so many criminal statutes throughout the United States that they have in a sense become words of art. The word 'thing' notwithstanding, the phrase is generally construed to cover intangibles as well as tangibles." 601 F.2d at 71. The *Girard* opinion reviews some of the intangibles which have been held to be *things of value,* including amusement, sexual intercourse or the promise of sexual intercourse, the promise to reinstate an employee, and an agreement not to run in a primary election. *Id.* Furthermore, the testimony of a witness has been held to be a *thing of value. United States v. Zouras,* 497 F.2d 1115, 1121 (7th Cir.1974) (construing 18 U.S.C. § 876, which prohibits extortion of "money or other thing of value"). And, in a very broad construction, *thing of value* has been applied to commercially worthless stock which a defendant "believed" had value for himself. *United States v. Williams,* 705 F.2d 603, 623 (2d Cir.), *cert. denied,* 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983) (construing bribery statutes, 18 U.S.C. §§ 201(c), 201(g)).

It is clear then, that in the ordinary sense *thing of value* is not limited in meaning to tangible things with an identifiable commercial price tag. The defendants, however, argue that the ordinary interpretation is not applicable to section 1954 because of "crucial differences" between the statutory structure and legislative intent of section 1954 and other statutes. Defendants posit that the scope of *thing of value* is narrowed in section 1954 to include only tangibles with ascertainable value because the phrase is preceded by the terms "fee, kickback, commission, gift, loan, [and] money." We are not persuaded.

The legislative history of section 1954 indicates that the enumeration of terms preceding *thing of value* was intended as inclusory, rather than limiting, language. The initial House version of the statute contained "money or other thing of value" as the only description of prohibited items. *See* Conf.Rep. No. 1417, 87th Cong., 1st Sess. 13 (1962). Concerns were subsequently raised about the need to ensure that forms of improper influence less blatant than direct money payments would be covered by the statute. These concerns were raised, in part, because of the Department of Justice's experience in enforcing the *thing of value* provision of Section 302 of the Taft-Hartley Act (29 U.S.C. § 186). S.Rep. No. 908, 87th Cong., 1st Sess. 13–14 (1961). In response to these concerns, the House version was amended to expressly include the additional terms. Conf.Rep. No. 1417, 87th Cong., 1st Sess. 13 (1962).

■ Nothing in the legislative history of section 1954 suggests that Congress intended *thing of value* to be construed more narrowly than in other statutes employing the phrase. Congress was concerned with violations of trust and fiduciary duties by union fund trustees. *See United States v. Romano,* 684 F.2d 1057, 1063 (2d Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982). A violation of trust which is influenced by the offer of an intangible service is no less damaging to trust fund beneficiaries than if the influence was in the form of a cash kickback. The significant factor is that the trustee sufficiently valued the thing offered to compromise his integrity and position. We do not, therefore, find the language of sec-

tion 1954 to be ambiguous. The very words and purpose of the statute show that Congress clearly intended the scope of *thing of value* to include intangibles such as are alleged in the instant indictment. As Justice Holmes said, " '... there is no canon against using common sense in construing laws as saying what they obviously mean.' " *Croft,* 750 F.2d at 1362 (*quoting Roschen v. Ward,* 279 U.S. 337, 339, 49 S.Ct. 336, 336, 73 L.Ed. 722, 728 (1929)).[4]

■ Because we find the statute to be unambiguous in this situation, we have no reason to apply the rule of lenity. That rule only comes into play at the end of the statutory construction process in situations where the language of the statute is not clear. We find that the district court erred in reading section 1954 as ambiguous, and also erred in applying the rule of lenity.

As a result, we must remand No. 83–1276 to the district court. Our earlier holding that the Double Jeopardy Clause bars appeal in No. 84–1102 does not affect the appeal in No. 83–1276. This is for the obvious reason that the subject counts of No. 83–1276 were dismissed prior to trial, and, therefore, the defendants have not yet been placed in jeopardy. Nevertheless, those counts are affected by the collateral estoppel doctrine.

*United States v. Hernandez,* 572 F.2d 218, 220 (9th Cir.1978), sets out the three-step inquiry this court follows for collateral estoppel analysis in criminal cases. First, the issues in the two actions are identified so that we may determine whether they are sufficiently similar and material to justify invoking the doctrine. Second, we examine the first record to determine whether the issue was fully litigated. Finally, from our examination of the record, we ascertain whether the issue was necessarily decided.

■ Applying this analysis, it is initially most obvious that the allegations underlying Counts One through Twelve and Counts Thirteen and Fourteen establish that the trial of Counts One through Twelve involved factual issues substantially similar to those posed by Counts Thirteen and Fourteen. The benefit plan corruption alleged in Counts Thirteen and Fourteen was, after all, part of the overall scheme to defraud alleged in Counts One through Twelve.

Second, it is equally obvious that the government did fully litigate the issues involved in Counts One through Twelve at trial. As noted above, the district court warned the government it would have to prove all components of the unitary scheme to defraud as alleged in the indictment. This strict requirement of proof required the government to fully litigate all the alleged objectives and false pretenses of the scheme at issue in Counts One through Twelve, including those involved in the benefit plan corruption at issue in Counts Thirteen and Fourteen.

Third, the district court specifically found that proof of the alleged fraudulent objectives with respect to four benefit plans—both Local 19 plans and both Local 28 Contra Costa plans—was insufficient: "There just isn't any evidence that Lane and Marolda and Schwartz conspired to deprive those plans of the services of Lane and Marolda as trustees." These specific

---

**4.** Although not cited to us by any party, we are mindful of this court's decision in *Chappell v. United States,* 270 F.2d 274 (9th Cir.1959), which held that appropriating the services of another does not constitute a *thing of value* under 18 U.S.C. § 641. That decision has been criticized as a "limited, narrow, and unrealistic interpretation." *Croft,* 750 F.2d at 1362. Moreover, this court has not cited *Chappell* in support of its limited interpretation of *thing of value* since that case was decided in 1959. Rather, in the few situations presented to us, we have tended clearly toward a broader scope of *thing of value,* to include intangibles. *See, e.g., Sheker,* 618 F.2d at 609 (holding information can be a *thing of value* ); *United States v. Friedman,* 445 F.2d

1076 (9th Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971) (implicitly holding that government information is a *thing of value* under 18 U.S.C. § 641); *Whaley v. United States,* 324 F.2d 356 (9th Cir.1963) (implicitly holding that information can be a *thing of value* ).

Finally, the legislative history we have cited concerning the scope of *thing of value* is at odds with the decision in *Chappell.* Under these circumstances, the validity of the *Chappell* holding as binding authority in this circuit is seriously undermined. Because of this subsequent history, we believe we are correct in rejecting *Chappell.*

findings appear to be the only similar issues which were necessarily decided by the district court in granting the judgment of acquittal. Therefore, under the *Hernandez* inquiry, relitigation of these issues as against defendants is barred by the collateral estoppel doctrine. The allegations concerning the defendants' corrupt activities involving the two Oakland Benefit Plans of Local 28 remain as triable issues.

### III. CONCLUSION

For the reasons expressed herein, the appeal in No. 84–1102 as to defendants Schwartz, Lane and Marolda is barred by the Double Jeopardy Clause and is hereby DISMISSED. The appeal in No. 84–1102 as to defendant Chapman is not barred by the Double Jeopardy Clause, and the district court's dismissal of the indictment is AFFIRMED. The district court's pretrial dismissal of two counts, challenged in No. 83–1276, is REVERSED and REMANDED for further proceedings consistent with this opinion.