**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alfred Darnell FORD, Defendant– Appellant.**

**No. 03–10194.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2003.

Filed June 8, 2004.

Simone M. Shaheen (argued), Richmond, CA, for the defendant-appellant.

McGregor W. Scott, United States Attorney, and Kevin P. Rooney (argued), Assistant United States Attorney, Fresno, CA, for the plaintiff-appellee.

Before: O'SCANNLAIN, HAWKINS, and FISHER, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether the United States is barred by double jeopardy or collateral estoppel from prosecuting an owner for "managing and controlling" real estate for the purpose of distributing cocaine when he was previously acquitted of "knowingly opening" the same place for such purpose.

I

In March 2001, a joint federal and local law enforcement sting operation targeted a piece of commercial property in Fresno, California, partially owned by Alfred Darnell Ford. Law enforcement officials from the Fresno Police Department and the United States Drug Enforcement Agency directed a paid informant to visit the property. The informant and an employee of Ford's met several times over a few days, sometimes with a second informant and undercover officers, eventually discussing a possible drug sale. After negotiations for a significant drug purchase broke off, officers arrived at the property and arrested several people, including Ford.

A federal grand jury in the Eastern District of California duly returned indictments against Ford and two other men, charging them with conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846, and possession with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1). Ford was also charged with opening and maintaining a place for cocaine distribution under 21 U.S.C. § 856(a)(1). At the time Ford was indicted, § 856(a)(1) made it unlawful to "knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1) (1994) (amended by Pub.L. No. 108–21, § 608, 117 Stat. 650, 691 (2003)).

Superseding and second superseding indictments were returned against the three men, adding the specification that the offense under § 841(a)(1) involved more than 50 grams of cocaine base or crack and alleging that Ford was a felon in possession of firearm ammunition in violation of 18 U.S.C. § 922(g)(1).

After Ford's case was severed from that of his co-defendants, he was tried by a jury. When the prosecution rested its case, the district court granted Ford's Fed. R.Crim.P. 29[1] motion and entered a judgment of acquittal on the § 856(a)(1) charge, explaining that insufficient evidence existed to permit a reasonable jury to find that Ford had "knowingly opened or maintained his premises for the purpose of distributing cocaine." The jury acquit-

---

1. The rule reads in relevant part: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a).

ted Ford of the cocaine and ammunition possession charges, but was unable to reach a verdict on the conspiracy count.

Subsequently, the grand jury returned a third superseding indictment, charging Ford with conspiracy to possess cocaine with intent to distribute under §§ 846 and 841(a). For the first time in the proceedings against Ford, the indictment charged him—in Count 3—with managing and controlling a place for the distribution of cocaine under 21 U.S.C. § 856(a)(2), which made it unlawful to "manage or control any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." 21 U.S.C. § 856(a)(2) (1994) (amended by Pub.L. No. 108–21, § 608, 117 Stat. 650, 691 (2003)).

Ford filed a motion to dismiss Count 3, arguing that the Government was attempting to try him for "managing and controlling" under § 856(a)(2) for the same conduct for which he had been acquitted under § 856(a)(1)'s "knowingly opening" requirement. After a hearing, the district court denied Ford's motion, and he timely appeals.

## II

■ Ford first contends that the Government's attempt to try him under § 856(a)(2) after having been acquitted of the § 856(a)(1) count in his first trial constitutes a double jeopardy violation. The Double Jeopardy Clause declares that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. CONST. amend. V. By prohibiting a second prosecution for the same offense after an earlier acquittal or convic-

tion, the Clause "serves primarily to preserve the finality of judgments in criminal prosecutions and to protect the defendant from prosecutorial over-reaching." *Garrett v. United States,* 471 U.S. 773, 795, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985) (O'Connor, J., concurring).

■ Ford urges that similar language in both (a)(1) and (a)(2) should be read to contain the same intent requirement—that is, the defendant must be shown to have acted "for the purpose of" manufacturing, distributing, or using drugs. Because the district court ruled at the close of the prosecution's case that insufficient evidence existed for the jury to find that Ford intended the property to be used as a place of cocaine distribution under (a)(1), he argues that the Government is barred from retrying him under (a)(2) for what is effectively the same offense. Ford further claims that Congress did not intend that a person be prosecuted or punished for the same act under both subsection (a)(1) and (a)(2), and that the subsections' similarity means that the statute cannot pass muster under the "same elements" test derived from *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

The Government counters Ford's claim of double jeopardy by arguing that the *Blockburger* test is met here. The *Blockburger* test asks "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *see also United States v. Vargas–Castillo,* 329 F.3d 715, 720 (9th Cir.2003) ("Double jeopardy is not implicated so long as each violation requires proof of an element which the other does not."); *United States v. McKittrick,* 142 F.3d 1170, 1176 (9th

Cir.1998) ("The test for multiplicity—charging a single offense in more than one count—is whether each separately violated statutory provision 'requires proof of an additional fact which the other does not.' ") (quoting *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180). Subsection (a)(1), the Government asserts, requires that the owner himself intend to engage in prohibited drug manufacturing, distribution, or usage, while (a)(2) requires only that he knowingly permit others who have such intent to engage in drug-related activity on the property.

*United States v. Tamez*, 941 F.2d 770 (9th Cir.1991), controls here. There, we adopted exactly the Government's position in this case—that subsections (a)(1) and (a)(2) have different subjective intent elements. *Id.* at 774. Tamez—like Ford here—contended that the "purpose" language of (a)(2) should be interpreted in light of the nearly-identical prohibited purpose language of (a)(1). *Id.* Arguing that (a)(1) required the Government to prove that a defendant opened or maintained a building with the specific intent to engage in prohibited manufacturing, distribution, or usage, Tamez claimed that the Government likewise needed to prove that he intended to use a building for a prohibited drug-related purpose in order to convict him under subsection (a)(2). *Id.* Put differently, Tamez argued that he himself had to have the illegal purpose to satisfy the intent requirement of subsection (a)(2).

But we disagreed, reasoning that each subsection had a different intent element: "[I]t is clear that (a)(1) was intended to apply to deliberate maintenance of a place for a proscribed purpose, whereas (a)(2) was intended to prohibit an owner from providing a place for illegal conduct, and yet to escape liability on the basis either of lack of illegal purpose, or of deliberate ignorance." *Id.* We went on to say that

subsection (a)(2) "require[d] only that proscribed activity was present, that Tamez knew of the activity and allowed that activity to continue." *Id.* Thus, *Tamez* establishes that the subject of the phrase "for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance" in subsection (a)(2) is the *user* of the property—and not the manager or controller who makes the property available to the user.

We did not specifically perform a *Blockburger* analysis in *Tamez*, but our twin conclusions that both subsections "must have meaning" and have different intent requirements mean that the "same elements" test is not satisfied by the two subsections of § 856. *Id.* Subsection (a)(2) requires that the manager or controller of the property make it available to *others*, knowing that the proscribed use will occur, but does not require that the *manager* or *controller* have the "purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." 21 U.S.C. § 856(a)(1); *see Tamez*, 941 F.2d at 774. In contrast, subsection (a)(1) requires that the person who opens or maintains the property have the "purpose of manufacturing, storing, distributing, or using a controlled substance" but does not require that person to make the property available to others. *See United States v. Basinger*, 60 F.3d 1400, 1404 (9th Cir.1995) (concluding that sufficient evidence existed to permit jury to infer that defendant "maintained" a shed and had the "purpose to manufacture, distribute, or use" methamphetamine in violation of § 856(a)(1)). In short, each subsection requires proof of an element the other does not. Thus, Ford's previous acquittal under subsection (a)(1) does not preclude his prosecution under (a)(2).

### III

■ Ford also contends that collateral estoppel independently bars his prosecu-

tion under Count 3. " 'The Supreme Court has incorporated the principles of collateral estoppel into the protections of the Double Jeopardy Clause.' " *United States v. James*, 109 F.3d 597, 600 (9th Cir.1997); *see Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Collateral estoppel prevents relitigation "when an issue of ultimate fact has once been determined by a valid and final judgment." *Ashe*, 397 U.S. at 443, 90 S.Ct. 1189. We follow a three-step inquiry in determining whether collateral estoppel bars a later suit:

> First, the issues in the two actions are identified so that we may determine whether they are sufficiently similar and material to justify invoking the doctrine. Second, we examine the first record to determine whether the issue was fully litigated. Finally, from our examination of the record, we ascertain whether the issue was necessarily decided.

*United States v. Schwartz*, 785 F.2d 673, 681 (9th Cir.1986).

■ Reiterating his contention that subsections (a)(1) and (a)(2) have identical intent elements, Ford first argues that the district court's ruling that no reasonable jury could find he had the requisite intent under (a)(1) bars the Government from relitigating the issue of intent in a prosecution under (a)(2). As we explained above, our conclusion in *Tamez* that the two subsections have different intent elements precludes such a broad claim.

■ But our inquiry does not end there, because Ford further argues that the Government is bound by the district court's conclusion that a single drug transaction is insufficient to trigger "distribution" liability under § 856. Ford points to the district court's comments in ruling on his Rule 29 motion to dismiss in the first trial:

> What I am going to rule, however, is in this particular case, based upon the facts before the Court, I cannot say that a reasonable jury could find that Mr. Ford has the requisite intent in this case with respect to this particular facility to be used a place of distribution. I recognize that the confidential informants met several times, but it was on a single drug transaction. And so I'm satisfied under the limited facts of this particular case, that there's insufficient evidence for a reasonable jury to find that Mr. Ford knowingly opened or maintained his premises for the purpose of distributing cocaine.

Because the district court's Rule 29 acquittal decision relied on the fact that the Government only demonstrated a single transaction, Ford argues that such finding should control in the current prosecution under subsection (a)(2). He notes that cases interpreting § 856(a)(1) suggest that multiple transactions are required to trigger distribution liability; by extension, the Government's case against him under § 856(a)(2) cannot survive the absence of evidence of multiple transactions. *See United States v. Church*, 970 F.2d 401, 406 (7th Cir.1992) ("The Barr Street and the Leith Street addresses did not involve isolated instances of distribution. Rather, the evidence established significant commercial sales."); *United States v. Clavis*, 956 F.2d 1079, 1090 (11th Cir.1992) (agreeing with trial court's jury instruction that required a finding of "continuity in pursuing the manufacture, distribution, or use of controlled substances").

Although our decision in *Tamez* established that subsections (a)(1) and (a)(2) prescribe different subjective intent elements for defendants, it did not alter the fact that the objective activity portion of the two subsections is identical. Both subsections require that there be a purpose to use the premises for manufacturing, use, or distribution, regardless of whose purpose it is. And the district court's dismiss-

al of the (a)(1) count was premised not on Ford's subjective intent, but on the objective activity requirement common to both subsections. The court made clear that it believed that evidence of only one transaction was insufficient to demonstrate distribution.

In other words, the illegal purpose of cocaine distribution required multiple instances of prohibited drug-related activities. As the court explained, "[B]ut if [a single transaction were sufficient to trigger § 856(a)(1)], then any time a drug transaction took place on someone's premises, whether it's their home or business, this section would be alleged." Thus, to sustain the charge under (a)(2) in a second trial would require a direct contradiction of the factual determination underlying the dismissal: that the single transaction cannot evince a "purpose" to distribute drugs. Because the objective activity requirement is identical under both subsections, we conclude that the distribution issue is sufficiently similar and material to satisfy the first prong of our collateral estoppel analysis. *See Schwartz*, 785 F.2d at 681.

We also conclude that the issue was fully litigated in the first trial, as required by the second step in our collateral estoppel analysis. During the hearing on Ford's Rule 29 motion, the district court distinguished *Tamez* and other cases construing § 856 by explaining that repeated instances of distribution were conceded there: "[I]n this case, there is no drug activity going on on the premises. It's going to be a single transaction." The Government in turn vigorously argued that a single transaction could constitute distribution or demonstrate a purpose to distribute. Unpersuaded by the Government's arguments, the district court ruled that insufficient evidence existed to permit a reasonable jury to find that Ford knowingly opened or maintained his premises for the purpose of distributing cocaine. In view of this spe-

cific airing of the issue in the Rule 29 hearing, we are convinced that the issue of whether a single transaction sufficed to establish distribution was fully litigated.

Finally, the record amply demonstrates that the issue was "necessarily decided." *See id.* As we explained above, the "single transaction" finding was clearly the fundamental reason for the district court's judgment of acquittal on the (a)(1) charge. Indeed, the district court tellingly stated that "if there were other facts indicating something more than the single transaction involved here, then I would have been inclined to deny [the Rule 29 motion]." Although the district court disclaimed any intent to decide the general legal question of whether a single transaction sufficed to establish liability under (a)(1), it indisputably viewed the issue as dispositive on the facts of this case. Given that the district court expressly cited the single transaction as the reason for granting the motion, we are satisfied that the issue was necessarily decided in Ford's first trial. *Cf. United States v. Romeo*, 114 F.3d 141, 143 (9th Cir.1997) (element of knowing possession was only issue disputed at trial and was thus necessarily decided by jury's acquittal); *United States v. Barragan–Cepeda*, 29 F.3d 1378, 1381–82 (9th Cir.1994) (issue of defendant's alienage was essential to verdict of acquittal in first trial, thus barring Government's relitigation of alienage in subsequent proceeding).

Because the three elements of collateral estoppel are present here, the Government may not relitigate the prohibited purpose issue under § 856(a)(2) in a second prosecution of Ford. We therefore conclude that the district court erred in denying Ford's motion to dismiss Count 3.

REVERSED and REMANDED.