**UNITED STATES of America, Plaintiff,**

v.

**Donna LEWIS, Defendant.**

**No. 96–1461M.**

United States District Court,
D. Colorado.

Sept. 3, 1996.

Carl O. Graham, Special Assistant United States Attorney, Fort Carson, CO, for plaintiff.

Lawrence K. Dean, Colorado Springs, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BORCHERS, United States Magistrate Judge.

THIS MATTER came before the Court for trial in Colorado Springs, Colorado on August 28, 1996. The following persons were present: Carl O. Graham, Special Assistant United States Attorney; Larry Dean, attorney for Defendant; and Defendant. The Court heard testimony from witnesses for the prosecution, as well as the Defendant. The Court took the matter under advisement at the conclusion of the trial. Further argument will be waived.

### I.

The Court has evaluated all of the evidence and makes the following findings. Defendant served on active duty with the United States Army from 1981 through 1993. Upon her release from active duty, Defendant remained in the active reserves of the U.S. Army and was assigned initially to a unit in Georgia. Defendant served in the medical field while in the U.S. Army and is by training a licensed practical nurse (LPN).

During her active duty in the U.S. Army, Defendant met and married Dudley Lewis. Three children were born during the course of the marriage. Dudley Lewis was and is a non-commissioned officer in the U.S. Army and apparently was serving in Germany at all times relevant to this case. The marriage of Defendant and Dudley Lewis ended in a dissolution of marriage approximately two and one-half years prior to the trial in this case.

Defendant moved to the Colorado Springs, Colorado area in early December, 1995. Defendant testified that she had wanted to relocate with her children to Colorado, as she liked the area. Defendant transferred her reserve status to a Denver-based unit known as the 5502nd United States Army Hospital. This unit broke into smaller detachments at the time Defendant was assigned to it, as Fitzsimons Army Medical Center in Denver was being de-activated. As a result, Defendant was assigned to a Colorado Springs detachment that met monthly at the Evans Army Community Hospital (Evans).

In December, 1995, Defendant sought medical care at the emergency room at Evans. Medical staff diagnosed that Defendant was pregnant. When Defendant went to the emergency room on that occasion, she provided Dudley Lewis' social security number as the basis for eligibility to receive medical care.

In late December, 1995, part of the 5502nd Army Hospital was activated for duty in Germany. The detachment being sent to Germany was to assume a duty station for a regular unit that was being sent to provide support for U.S. troops in Bosnia. During the activation process, Defendant was required to exchange her pink reserve identification card for a green identification card, with the latter being utilized by military personnel on active duty.

The detachment was sent to Fort Benning, Georgia for training prior to departure to Germany. Medical staff became aware that Defendant was pregnant and determined that she should not go with the detachment to Germany. Defendant was released from activation and returned home to Colorado Springs.

Defendant's reserve unit in Colorado Springs drilled on the first weekend in February, 1996. Defendant did not attend that drill. On February 13, 1996, Defendant again sought medical care at Evans for her pregnancy.

Defendant's reserve unit was scheduled to drill on the weekend of March 2–3, 1996. The unit drilled at Evans by providing services on various wards of the hospital. Defendant did not appear for drill on March 2, 1996. At no time did Defendant sign in for drill during that weekend.

On March 3, 1996 Defendant drove to the emergency room at Evans. She was admitted to the hospital as she was having labor pains and cramping. The baby was not due for some time, and Defendant appeared concerned that the child would be born prematurely.

After admission, Sergeant Lemailoa Tuiasosopo contacted Defendant to complete the paperwork for her entrance into the hospital. Sergeant Tuiasosopo asked Defendant about her eligibility for medical care and was advised that Defendant was a dependent. The Sergeant was provided the social security number of Dudley Lewis, but Defendant was unable to provide any information about Dudley Lewis' present unit or duty station. At the time of contact by the Sergeant, the computer used to verify eligibility for medical care was not working.[1]

Sergeant Tuisasosopo became concerned about Defendant's eligibility for care because of the vagueness of her answers. He confronted her, and Defendant advised him that she had dual eligibility, as she was a reserve non-commissioned officer on active duty. Defendant presented her green identification card to Sergeant Tuiasosopo. The admission process was concluded, and Defendant remained on the labor and delivery ward at Evans.

At approximately 12:00 Noon on March 3, 1996, Defendant was transferred by ambulance to Memorial Hospital in Colorado Springs. This transfer occurred as that hospital had better facilities to handle a problem pregnancy. Defendant was required to take anti-contraction medications and to remain on bed rest for approximately two weeks. Her fourth child was born in late March, 1996. Though apparently premature, the delivery was normal and the child is healthy.

After Defendant's discharge from Evans, hospital staff conducted a computer check and determined that Defendant was not eligible for medical care as a member of the U.S. Army Reserve. Staff at Evans then sent Defendant a bill for medical services provided on March 3, 1996 and referred the matter to the U.S. Army Criminal Investigation Division (CID) for investigation into possible criminal activity.

After completion of its investigation, the CID investigator presented the matter to the U.S. Attorney's Office. That office chose to proceed by way of a criminal information charging theft under $100 pursuant to 18 U.S.C. § 641. This charge is a Class A misdemeanor with a maximum penalty of one year incarceration and a $100,000 fine. Defendant entered a plea of not guilty, waived her right to a jury trial, and consented to proceed to trial before a United States Magistrate Judge.

## II.

Defendant raised two legal issues concerning the charge that must be examined. Each will be dealt with separately:

*Medical Services:* Defendant argued at the conclusion of the trial that all the prosecution had shown was that medical services were provided on March 3, 1996. Defendant argued that such services were not covered under 18 U.S.C. § 641 (§ 641). Therefore, according to Defendant, no activity prohibited by § 641 occurred on March 3, 1996.

A similar argument was advanced in *United States v. May,* 625 F.2d 186 (8th Cir.1980). In that case, the defendant was the former adjutant general of the State of Iowa. The evidence presented indicated that he had utilized military aircraft to travel to Florida and elsewhere in order to visit a female friend. After he was charged, the defendant argued that the military aircraft had to be used for training flights anyway and that any benefit he gained was incidental to any training use. Though the Eighth Circuit reversed part of the conviction because of defective instruc-

---

1. Medical care at military hospitals is available to active duty military personnel, dependents of active duty military personnel, and certain reserve military personnel.

tions, the court discussed the incidental use concept.

> We are unable to find any case using this admittedly novel standard. Determining whether the benefits from a use were incidental, as opposed to determining whether one use seriously violated the owner's rights of control, requires a primary focus on the intent of the actor rather than the nature of the use. It is, of course, possible that the government's benefits from the flights may have been only incidental to May's purposes, but the government's right to control the use of the flight time may nevertheless have been complete.

*Id.* at 193. The Eighth Circuit found that § 641 could be construed broadly enough to encompass this type of loss to the federal government.

In *United States v. Croft,* 750 F.2d 1354 (7th Cir.1984), a university professor was charged with a violation of § 641 for misuse of grant money. The defendant was engaged in research through the University of Wisconsin–Madison and had received a grant from the Environmental Protection Agency (EPA). During the course of his grant, the defendant utilized services of a student who was being paid by the EPA on a non-grant project. After investigation, the defendant was charged with a violation of § 641.

In *Croft,* the defendant argued that there was no violation of § 641, as student services were not covered by the statute. The defendant relied upon the Ninth Circuit's opinion in *Chappell v. United States,* 270 F.2d 274 (9th Cir.1959). In *Chappell,* a U.S. Air Force sergeant had airmen paint private apartments owned by the sergeant on government time. The Ninth Circuit had found no indication that such conduct was governed by § 641. The Eighth Circuit rejected the *Chappell* ruling and held that § 641 could be construed broadly enough to allow prosecution for theft of services.

Both *May* and *Croft* indicate that § 641 can be broadly construed to allow prosecution for loss of government services. Other cases involving § 641 substantiate this position. *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (deer hunter converted for his own use discarded simulated bombs, and a violation of § 641 held to be present); *United States v. Girard,* 601 F.2d 69 (2d Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979) (theft of information from DEA computer held to violate § 641).

■ This Court holds that § 641 does cover loss of government services, such as the medical care provided to Defendant. The fact that Evans would have had to be open anyway is immaterial. There is a sufficient legal basis for prosecution under § 641.

■ *Valuation of Services:* Defendant argued that there was insufficient evidence of value of the services. Defendant argued that valuation could not be established solely by a print out from a computer. Defendant argued that value of medical services had to be tied into the cost of services in the surrounding medical community.

The prosecution's evidence indicated that the services provided to Defendant exceeded $2,200. Since it chose not to pursue a charge under § 641 for theft over $100, a felony, the prosecution had to establish only that the services had some value.

No cases were cited nor did the Court find any dealing with value of medical services under § 641. Some guidance, though, can be found in cases were valuation was crucial for the delineation between a felony and misdemeanor. In *United States v. Oberhardt,* 887 F.2d 790 (7th Cir.1989), the defendant was accused of improperly procuring government property. The defendant had paid $200 for a document that was available for $45.25. The Seventh Circuit allowed the valuation to be based upon a "thieves' market", since the defendant had wanted to obtain this document for improper purposes and was willing to pay a premium. This valuation allowed for conviction of a felony.

In *United States v. Brookins,* 52 F.3d 615 (7th Cir.1995), the Seventh Circuit was presented with an issue of valuation of goods stolen in interstate commerce. The defendant argued that the value of a camera was less than $100 and, therefore, he should only be convicted of a misdemeanor. The court

allowed evidence of the value offered for the stolen camera. That value established the basis for a felony conviction.

■ In this case, the Court does not need to rely upon a "thieves' market" valuation or the amount offered for a stolen item. The prosecution has chosen to pursue this case as a misdemeanor, rather than a felony. As such, the prosecution need only establish that the services had *some* value. In this case, the evidence established that Defendant was admitted to the hospital and received services up to the time that she was transferred to Memorial Hospital. The medical records reflect that an ultrasound test was taken and that Defendant received medications while at Evans. Those medications, along with the film necessary for the ultrasound test, were used in the process of treating Defendant. Those items had some value. The prosecution, thus, met its burden of establishing some value for services provided to Defendant on March 3, 1996.

### III.

■ The evidence presented to this Court indicates that Defendant attempted to secure medical services from December, 1995 on at Evans by utilizing her ex-husband's status as an active duty military serviceman. Defendant had been on active duty for over twelve years in the medical field and was fully aware that she was not eligible for medical services in December, 1995 through March, 1996 as a military dependent.

When questioned on March 3, 1996 as to her eligibility, Defendant then raised for the first time her claim to services based upon her reserve status. The evidence indicated that Defendant was fully aware that she had been released from activation due to her pregnancy. By her own testimony, she was directed to report to her reserve unit and to exchange her green identification card for one that was pink. The evidence indicated that Defendant's pregnancy was unrelated to any military duty.

The evidence presented to this Court indicated that Defendant was aware that she was pregnant and that she needed medical care.

Defendant was caring for three children, had no medical insurance, and had no employment when she arrived in Colorado. Defendant undertook to receive medical care from a source with which she was familiar and had been part of for over a decade. Defendant attempted to claim dependency and then active duty status.[2] The prosecution has established beyond a reasonable doubt that Defendant received government medical services when she knew she was not entitled to the same. Defendant's testimony during trial was not credible in light of her actions and statements over the space of four months.

IT IS HEREBY ORDERED that Defendant is found guilty of the charge of theft under $100 in violation of 18 U.S.C. § 641; and

IT IS HEREBY ORDERED that this matter is referred to the Probation Department for a presentence report; and

IT IS FURTHER ORDERED that Defendant shall make and keep an appointment with the Probation Department on or before September 23, 1996; and

IT IS FURTHER ORDERED that this matter is set for sentencing on January 15, 1997 at 3:00 p.m.

---

2. Defendant was not eligible for medical care as a reservist, as she was not on active duty for more than thirty days and the pregnancy was not a result of military duty. Army Regulation 40–3, § 4–2.