UNITED STATES of America, Appellee,

v.

**Peter L. COLLINS, Appellant.**

**No. 93–3204.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 23, 1995.

Decided June 16, 1995.

Rehearing Denied Aug. 17, 1995.

John M. DiJoseph, Arlington, VA, argued the cause for appellant. With him on the brief was Ted Kavrukov.

Laura A. Ingersoll, Trial Atty., U.S. Dept. of Justice, Washington, DC, argued the cause for appellee. With her on the brief was Michael A. Attanasio, Trial Atty., U.S. Dept. of Justice, Washington, DC.

Thomas N. Burrows, Atty., U.S. Dept. of Justice, Washington, DC, entered an appearance.

Before BUCKLEY, GINSBURG, and SENTELLE, Circuit Judges.

Dissenting Opinion filed by Circuit Judge SENTELLE.

PER CURIAM:

Peter Collins was convicted of converting government property valued at more than $100, in violation of 18 U.S.C. § 641 (1988). Specifically, he was convicted of converting government computer time and storage, as well as the use of photocopiers and office supplies, over a five year period, to support his ballroom dance activities. Appellant raises numerous arguments on appeal. While we have afforded all of them due consideration and conclude none possesses merit, only two issues deserve particular discussion. First, appellant contends section 641 only covers the conversion of tangible property, thus precluding the charge that appellant converted to his own use the government's computer time and storage. Second, assuming section 641 covers the conversion of such intangible property, appellant argues the government failed to meet its evidentiary burden in proving this charge. While we disagree with appellant's narrow interpretation of the statute, we agree the government provided insubstantial evidence that appellant converted computer time and storage. Nevertheless, because the government sufficiently proved appellant had converted government property to make photocopies for his personal benefit, we must affirm the judgment.

## I. BACKGROUND

The Defense Intelligence Agency ("DIA") provides intelligence support to all branches of the United States military. Peter Collins joined the DIA as a civilian technical analyst in 1983. In 1985, Collins was granted access to a classified computer system, the Support for the Analyst File Environment ("SAFE") system, which had been created to distribute military cable traffic to intelligence analysts and facilitate their analysis. The SAFE system could also be used for word processing. Because the system was highly classified, Collins received a password to enable him to access the system and his files.

Collins was also actively involved in amateur ballroom dancing through the United States Amateur Ballroom Dance Association ("USABDA"). Collins was a member of the Washington, D.C., chapter, as well as an avid competitor. It is undisputed that Collins used the computer system to create documents relating to his ballroom dance activities. Collins claimed he had the implied consent of his superiors to engage in such activity, contrary to the government's position. Collins created a chapter newsletter on the computer, the *Richmond Dance News,* which he produced and edited for approximately two years. Although disputed by Collins, the government asserted at trial that Collins also copied the newsletters on DIA photocopiers. In late 1987, the Richmond chapter decided to produce the newsletter itself. However, Collins continued to maintain the Richmond chapter mailing lists on the SAFE system. In fact, the USABDA would send him mailing list updates on disk, which Collins loaded onto the SAFE system.

Also in 1987, Collins created a ballroom dance competition calendar on the government's computer system. He continually updated the calendar, publishing it monthly. By 1991, the calendar was 17 pages long.

In mid–1991, one of Collins' coworkers showed a copy of a dance-related document to Collins' supervisor, George Price. Price reprimanded Collins for using a government copier for his personal material. Collins, however, disavowed any knowledge of the photocopied paper. However, the extent of Collins' use of the SAFE system for dance-related activities was discovered when a co-worker found letters and mailing lists in a computer folder that automatically collected files which Collins had deleted. In February 1992, DIA security personnel obtained authorization to access Collins' computer files to assess the extent of his personal use of the computer system. They found twelve separate computer folders, which contained hundreds of documents consisting primarily of ballroom dancing material.

In November 1992, agency personnel opened a number of file cabinets containing a large amount of Collins' dance-related materials. Included were hard-copy printouts of many of the articles and mailing lists found in Collins' computer files, dating back to 1986. Using both the actual newsletters and Collins' own records of the number of each newsletter sent out, the government calculated Collins made at least 56,500 copies. Similarly, the number of photocopies required to produce a few editions of the ballroom dance calendar for which Collins claimed reimbursement for postage from the USABDA was nearly 20,000. Collins was subsequently prosecuted and convicted of converting government computer time and storage, as well as office supplies to make photocopies, in violation of 18 U.S.C. § 641. This appeal followed.

## II. DISCUSSION

Appellant first argues his conviction must be reversed because section 641 only criminalizes the conversion of tangible property. As a result, appellant could not be charged and convicted of converting government computer time and storage because these forms of property are intangible. The Supreme Court held in *Yates v. United States,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957), "[W]e think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one [legal] ground, but not on another, and it is impossible to tell which ground the jury selected." Therefore, if appellant is correct, we would have no choice but to reverse appellant's conviction because we would not know on which ground the jury

convicted appellant. That is, the jury could have convicted solely on the legitimate ground of appellant's conversion of office supplies in making photocopies [1] or, alternatively, on the impermissible ground of conversion of computer time and storage.

However, we disagree with appellant's narrow interpretation of section 641, and hold that the statute encompasses a prohibition on the conversion of intangible property. The statute renders criminally liable any person who "knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any ... thing of value of the United States or of any department or agency thereof." 18 U.S.C. § 641. At common law, only tangible property or chattels were subject to the tort of conversion. *See* Restatement (Second) of Torts § 222A (1965). We have held, however, that "[t]his overly restrictive rule has ... been relaxed in favor of the reasonable proposition that any intangible generally protected as personal property may be the subject matter of a suit for conversion." *Pearson v. Dodd,* 410 F.2d 701, 707 n. 34 (D.C.Cir.1969), *cert. denied,* 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969).

Both the language of the statute and the seminal Supreme Court case interpreting the provision establish that the statute is broader than the common law definition of conversion. First, Congress did not limit those things which could be converted to "tangible property," but rather any "thing of value." *See* 18 U.S.C. § 641. We cannot say Congress, by enacting such broad language, intended to restrict the Act's coverage solely to tangibles. While we do not assert that Congress necessarily had to use the term "tangible property" within the text to support appellant's position, we note the language chosen by Congress could not have been broader. Consequently, we refuse to ignore the plain meaning of the provision. *See Railroad Yardmasters of America v. Harris,* 721 F.2d 1332, 1342 (D.C.Cir.1983) ("We have given every word its ordinary meaning and every provision full effect.").

Our textual analysis is buttressed by the Supreme Court's interpretation of section 641 in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). In *Morissette,* the Court undertook an exhaustive examination of the legislative history of section 641, concluding Congress enacted the provision to close loopholes and gaps between various common law offenses. One passage is worth quoting in full:

> What has concerned codifiers of the larceny-type offense is that gaps or crevices have separated particular crimes of this general class and guilty men have escaped through the breaches. The books contain a surfeit of cases drawing fine distinctions between slightly different circumstances under which one may obtain wrongful advantages from another's property. The codifiers wanted to reach all such instances.

*Id.* at 271, 72 S.Ct. at 254. Congress intended to enact a broad prohibition against the misappropriation of anything belonging to the national government, unrestrained by the fine and technical distinctions of the common law. This view is supported by footnote 28 of *Morissette* which states "The history of § 641 demonstrates that it was to apply to acts which constituted larceny or embezzlement at common law and also acts which shade into those crimes but which, most strictly construed, might not be found to fit their fixed definitions." *Id.* at 269 n. 28, 72 S.Ct. at 253 n. 28. Congressional intent, as evinced in *Morissette,* clearly confirms our textual analysis that the scope of section 641 covers the misappropriation of intangible property.[2]

---

1. While photocopier use is admittedly intangible property, the office paper and toner allegedly used to make the photocopies are tangible property, undisputedly covered by section 641.

2. Because *Morissette* teaches that the Congress in § 641 criminalized conduct beyond that actionable under the common law, we cannot agree with the dissent's reliance upon the common law tort of conversion to create "the grievous ambiguity" necessary to invoke the rule of lenity. The dissent supports its position with a citation to *Morissette* wherein the Court notes that the use of a legal term of art by the Congress indicates an awareness of the "cluster of ideas" attached to that term. But *Morissette* also teaches that the "meaning" of that term, here "conversion," is determined by that "cluster of ideas" only insofar as the courts are not "otherwise instructed."

While not central to our analysis, we note that every circuit, except one, dealing with this issue has held that intangible property falls within the purview of section 641.[3] *See, e.g., United States v. Jeter,* 775 F.2d 670, 680 (6th Cir.1985) ("the Congress' very use of the more expansive 'thing of value' rather than 'property' strongly implies coverage beyond mere tangible entities."), *cert. denied,* 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986); *United States v. Croft,* 750 F.2d 1354, 1361 (7th Cir.1984) (services rendered constitute a thing of value); *United States v. May,* 625 F.2d 186, 191–92 (8th Cir.1980) (thing of value includes flight time); *United States v. Girard,* 601 F.2d 69, 71 (2d Cir.) (content of a writing, while an intangible, is a thing of value), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979).

Nevertheless, while we hold section 641 prohibits the conversion of computer time and storage, we find the government here failed to meet its evidentiary burden in proving this charge. Appellant moved for a judgment of acquittal after a jury found him guilty. The government concedes the motion was denied *de facto* by the district court's entry of a judgment of conviction. When reviewing a motion for a judgment of acquittal, we accord much deference to a guilty verdict. The sole issue is whether substantial evidence exists to support the verdict. *United States v. Musser,* 873 F.2d 1513, 1519 (D.C.Cir.), *cert. denied,* 493 U.S. 983, 110 S.Ct. 518, 107 L.Ed.2d 519 (1989). "Our task ... is to view the evidence in the light most favorable to the government, allowing the government the benefit of all reasonable inferences that may be drawn from the evidence." *Id.* (quoting *United States v. Sutton,* 801 F.2d 1346, 1358 (D.C.Cir.1986)). If the evidence reasonably allows either an acquittal or a conviction, the decision is reserved to the jury. *Curley v. United States,* 160 F.2d 229, 232 (D.C.Cir.), *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

However, we do not "fulfill our duty through rote incantation of these principles." *United States v. Long,* 905 F.2d 1572, 1576 (D.C.Cir.), *cert. denied,* 498 U.S. 948, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990). The test is whether a reasonable jury *"must necessarily* entertain a reasonable doubt on the evidence presented." *United States v. Singleton,* 702 F.2d 1159, 1163 (D.C.Cir.1983) (emphasis in original).

Guided by these principles, we conclude the government provided insufficient evidence that appellant converted to his own use the government's computer time and storage. The cornerstone of conversion is the unauthorized exercise of control over property in such a manner that *serious interference* with ownership rights occurs. Section 228 of the Restatement (Second) of Torts states "[o]ne who is authorized to make a particular use of a chattel, and uses it in a manner exceeding the authorization, is subject to liability for conversion to another whose right to control the use of the chattel is thereby *seriously violated."* *Id.* (emphasis added). The interference is of such a magnitude that the converter must pay the rightful owner the full value of the property converted. RESTATEMENT (SECOND) OF TORTS § 222A.

The court's decision in *United States v. Wilson,* 636 F.2d 225 (8th Cir.1980), is illuminating on this point. Appellant was found guilty by a jury of converting government property in violation of section 641. Specifically, appellant was charged with converting secretarial time by using a government secretary to type documents for his personal business. *Id.* at 225. No evidence existed, however, that the work interfered with the secretary's official duties. *Id.* at 225–26. The district court granted a motion for judgment of acquittal, and the appellate court affirmed this judgment. *Id.* at 228. The court held there was no evidence that appel-

---

In § 641, the Congress has instructed that "any ... thing of value" may be converted, thus supplanting any contrary inference arising from the common law.

**3.** The Ninth Circuit, in *Chappell v. United States,* 270 F.2d 274 (1959), held conversion was limited to tangible chattels under § 641. This holding, however, remains in doubt within the Circuit itself. *See United States v. Schwartz,* 785 F.2d 673, 681 n. 4 (9th Cir.1986) ("this court has not cited *Chappell* in support of its limited interpretation of *thing of value* since that case was decided in 1959") (emphasis in original).

lant's conduct seriously interfered with the rights of the government. The court focused on the fact that appellant and his secretary had little or no assigned work during the period in question. Consequently, appellant could not have seriously interfered with the government's ownership rights because the government was never deprived of the use or possession of its property. Thus, while appellant may have engaged in a breach of fiduciary duty, his conduct was not criminal. *Id.*

Similarly, the government did not provide a shred of evidence in the case at bar that appellant seriously interfered with the government's ownership rights in its computer system. While appellant concedes he typed in data and stored information on the computer regarding his personal activities, no evidence exists that such conduct prevented him or others from performing their official duties on the computer. The government did not even attempt to show that appellant's use of the computer prevented agency personnel from accessing the computer or storing information. Thus, appellant's use of the government computer in no way seriously interfered with the government's ownership rights.

■ Nevertheless, we could reverse appellant's conviction only if the government also failed to provide sufficient evidence that appellant made photocopies for his personal benefit using government photocopiers and paper. In *Griffin v. the United States,* 502 U.S. 46, 58–59, 112 S.Ct. 466, 474, 116 L.Ed.2d 371 (1991), the Supreme Court held that a general verdict cannot be set aside merely because one of the possible bases of conviction is unsupported by adequate evidence. The Court presumed jurors are well equipped, through their intelligence and expertise, to analyze the evidence and convict on the ground with sufficient evidence. *Id.* The Court contrasted this situation with that governed by *Yates v. United States, supra,* in which a jury convicts a defendant on two grounds, one of which is *legally* insufficient. Under such circumstances, the conviction must be reversed. The Court stated that "[j]urors are not generally equipped to determine whether a particular theory of convic-

tion submitted to them is contrary to law ... [T]here is no reason to think that their own intelligence and expertise will save them from that error." *Id.* at 59, 112 S.Ct. at 474.

■ After carefully examining the record, we conclude the government presented adequate evidence to convict appellant under section 641 regarding the making of personal photocopies. For instance, appellant's co-worker, Dana Sweet, testified that he saw appellant on several occasions copy dance-related materials, particularly mailing and newsletter documents. In addition, appellant's supervisor, John Yurechko, testified that on two separate occasions, he saw appellant exit a photocopying room with dance-related materials in hand. On one of these occasions, Yurechko observed appellant at the photocopy machine finishing a transaction, although, admittedly, he did not actually see what appellant was copying. The government also presented into evidence two letters from appellant to different Richmond USABDA Chapter treasurers. In the first letter, dated January 16, 1987, appellant asserted, "there were no costs for paper or printing since I was able to obtain these for free." [Joint Appendix, p. 71]. In the second letter, composed five years later on January 31, 1991, appellant wrote "fortunately, I am able to get the paper and printing donated." [Joint Appendix, p. 69].

■ We find this evidence more than sufficient to persuade a rational fact finder beyond a reasonable doubt that appellant photocopied dance-related material using government property. There is no requirement that a defendant must be convicted with direct evidence. The evidence may be entirely circumstantial. *United States v. Poston,* 902 F.2d 90, 94 n. 4 (D.C.Cir.1990). *See also United States v. Nnanyererugo,* 39 F.3d 1205, 1207 (D.C.Cir.1994) ("[n]o distinction is made on review between direct and circumstantial evidence."), *cert. denied,* —— U.S. ——, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995); *United States v. Teffera,* 985 F.2d 1082, 1085 (D.C.Cir.1993) (in evaluating the government's proof, the court does not distinguish between direct and circumstantial evidence). As a result, we are unable to reverse appel-

lant's conviction on an insufficiency of evidence rationale.

## III. CONCLUSION

While we hold intangible property is within the purview of section 641, we find the government here presented no evidence that appellant seriously interfered with the government's computer time and storage. Nevertheless, because we cannot reverse a jury verdict solely because one of the two factual bases is not supported with sufficient evidence, we have no choice but to affirm the judgment.

*It is so ordered.*

SENTELLE, Circuit Judge, dissenting:

While I concur with my colleagues that the prosecution did not demonstrate appellant seriously interfered with the government's computer time and storage, I respectfully disagree whether 18 U.S.C. § 641 (1988) contemplates a prohibition on the conversion of intangible property. Section 641 criminalizes the conduct of anyone who "knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any ... thing of value of the United States or of any department or agency thereof." The statute was the product of the revision of Title 18, enacted in 1948. Because I find the statute at best ambiguous as to its application to intangibles, I would apply the rule of lenity and construe the statute in appellant's favor. Consequently, I would reverse appellant's conviction.

The rule of lenity is invoked where "there is a grievous ambiguity or uncertainty in the language and structure of [an] Act, such that even after a court has seize[d] every thing from which aid can be derived, it is still left with an ambiguous statute." *Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991) (internal quotations omitted; citations omitted). After examining the text and congressional intent of section 641, as informed by *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), while I do not find the *per curiam* position unreasonable, neither do I find it compelling.

First, while section 641 criminalizes the conversion of any "thing of value," I find it reasonable that Congress may not have intended to prohibit the conversion of purely intangible property such as computer time and storage. While it is uncertain to what extent Congress even considered the conversion of intangible property in 1948, it is extremely likely Congress never contemplated the conversion of intangible property completely divorced from a tangible item, as is the case here. While few, if any, jurisdictions presently limit the conversion of property to that which is solely tangible, "[t]he process of expansion has stopped with the kind of intangible rights which are customarily merged in, or identified with some document." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS, § 15 at 92 (5th ed. 1984). Accordingly, the vast majority of jurisdictions have limited the expansion of the tort in conformity with this rule. The law in 1948 could only have been more grudging.

While language exists in *Morissette* supporting the *per curiam* position, other language gives equal credence to appellant's narrower reading. The Court asserted that "where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." 342 U.S. at 263, 72 S.Ct. at 250. In 1948, let alone today, the tort of conversion did not encompass intangible property independent of and unrelated to a tangible chattel. Heeding these words, I am reluctant to interpret "thing of value" in the context of conversion as broadly as the *per curiam.*

Consequently, I find section 641, as informed by *Morissette,* ambiguous regarding whether the statute prohibits the conversion of computer time and storage. Therefore, I would invoke the rule of lenity, and conclude that the district court erred in sending to the jury the charge of whether appellant converted government computer time and storage. Because it would thus be impossible to deter-

mine on which ground the jury actually convicted, I would reverse appellant's conviction under *Yates v. United States,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957).