# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2917

_____

United States of America,

       Appellee,

v.

Gerald 'Jump' Big Crow,

       Appellant.

Appeal from the United States
District Court for the
District of South Dakota.

_____

Submitted: February 10, 2003

Filed: May 5, 2003

_____

Before WOLLMAN, RICHARD S. ARNOLD, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

A jury convicted Gerald "Jump" Big Crow of five counts of theft from an Indian tribal organization in violation of 18 U.S.C. § 1163. The district court sentenced Big Crow to three years' probation, restitution of $59,114.53, and a special assessment of $500.00. Big Crow appeals, contending that the district court erred by denying his motion for judgment of acquittal, as his failure to pay rent did not constitute a violation of the statute under which he was charged. We reverse.

I.

The Oglala Sioux Lakota Housing Authority (Housing Authority) is an Indian tribal organization that manages and maintains 1,808 housing units on the Pine Ridge Indian Reservation in South Dakota. The Housing Authority is governed by the Tribal Council and a Board of Commissioners (Board). The Housing Authority receives operational funding from the United States Department of Housing and Urban Development (HUD) and thus is subject to HUD regulations. The Housing Authority has established policies concerning applications for housing, certification of income, and rent payment. The rent policy states that tenants who habitually fail to pay rent shall be evicted.

The Board's views concerning the calculation of rental fees have conflicted with HUD regulations over the years. The Tribal Council enacted ordinances (later rescinded), which the Board adopted, establishing rent ceilings. Ordinance 87-05 established the rent for the year 1987. Prior to July 2000, rent for low-income housing was not capped but was based upon income level and family size, as established by federal regulation. Big Crow and others who served as leaders in tribal government believed that rental fees should be commensurate with the conditions and appraised values of the units, rather than the income level of the residents.

Big Crow, who has been active in tribal politics and has served as a member of the Tribal Council, first began leasing a low-rent unit in the early 1970s. In April 1987, he signed a lease with the Housing Authority establishing a month-to-month tenancy of Unit 729-02 (unit). The lease obligated Big Crow to pay $428.00 in rent monthly and would "be automatically terminated" if Big Crow failed to pay the rent or violated any other provision of the lease. At the time Big Crow signed the lease, ordinance 87-05 had been adopted by the Tribal Council pending HUD approval. The ordinance capped a tenant's rent at the amount paid on July 1, 1986. Big Crow wrote on the bottom of the lease agreement, "I will not pay this [rent] till HUD comes

up with a desision [sic] on the resolution passed by the Tribe. 87-05." The lease also was signed by the Housing Authority Executive Director Daryl Twiss and representative Jacqueline Grey. Neither Twiss nor Grey approved Big Crow's annotation to the lease.

On April 3, 1987, HUD sent a letter notifying the Housing Authority that Tribal Resolution 87-05 was "a direct violation of federal statute." The Tribal Council consequently rescinded the resolution. In June 1987, the rental fee for the unit was increased to $472.00 per month. Big Crow, however, continued to pay the Housing Authority $114.00 each month, the amount he was paying on July 1, 1986, for a different residence. Big Crow neither sought nor received permission to pay a reduced amount of rent for the unit. Twiss ultimately instituted civil eviction proceedings in tribal court against Big Crow and seventy-nine other families who were delinquent in paying rent. A default judgment was entered against Big Crow in June 1992 ordering his eviction. On July 1, 1992, Big Crow obtained a stay of execution of the eviction because of the failure of his attorney to appear at the hearing on the default judgment. The then attorney for the Housing Authority, Jerry Matthews, continued to press Big Crow to make his full monthly payments and to become current on his back rent. Shortly thereafter, the Tribal Council fired Twiss and Matthews and suspended the members of the Board. No further tribal court action was taken to evict Big Crow or any other delinquent renter. In 1996, Fern Mousseau, a Tenant Service Representative for the Housing Authority, notified Big Crow that he owed a significant amount of money in back rent. Although she sought to effect a settlement of Big Crow's arrears, no settlement was ever reached.

By 1996, tenants of the Housing Authority owed more than $2.1 million in back rent. By 1999, Big Crow owed the Housing Authority approximately $57,000.00. On July 1, 2000, two months before Big Crow was indicted, a new rent policy took effect. Pursuant to the policy, units were appraised and rents were reduced from their former level based upon the condition of the unit. The rent for the

unit in which Big Crow lived was appraised at $100.00 per month. The policy also provided that twenty percent of a tenant's debt would be forgiven for each year that the tenant paid the current rent. The rent-forgiveness provisions of the policy were rescinded following Big Crow's indictment.

The record reflects that Big Crow and his family still reside in the unit. Their lease has not been terminated by the Housing Authority, nor has Big Crow or any member of his family been evicted from the premises.

## II.

On the basis of his failure to pay the required amount of rent during the years 1995 through 1999, Big Crow was indicted on five counts of theft from an Indian Tribal organization in violation of 18 U.S.C. § 1163, which provides:

> Whoever embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization . . . [s]hall be fined under this title, or imprisoned not more than five years, or both . . . .

Big Crow contends that his motion for judgment of acquittal should have been granted because his refusal to pay the full amount of rent did not constitute a violation of § 1163. In response, the government contends that Big Crow's possession of the unit and his willful failure to pay the full amount of rent owed pursuant to the lease constituted the knowing conversion of the Housing Authority's property and assets in violation of the statute.

In considering a district court's denial of a motion for judgment of acquittal, we view "the evidence in the light most favorable to the verdict and accept as

established all reasonable inferences supporting the verdict." United States v. Barrios-Perez, 317 F.3d 777, 779 (8th Cir. 2003) (citing United States v. Harmon, 194 F.3d 890, 892 (8th Cir. 1999) (citation omitted)). We will uphold the conviction unless "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (quotations omitted).

"[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." United States v. Long Elk, 805 F.2d 826, 828 (8th Cir. 1986) (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)).

Section 1163 proscribes the embezzlement, theft, willful misapplication, and knowing conversion of "moneys, funds, credits, goods, assets, or other property." "At common law only tangible property or chattels were subject to the tort of conversion." United States v. Collins, 56 F.3d 1416, 1419 (D.C. Cir. 1995) (citing Restatement (Second) of Torts § 222A (1965)). The Collins court interpreted 18 U.S.C. § 641, which renders criminally liable any person who "knowingly converts . . . any thing of value of the United States or of any department or agency thereof," as encompassing "intangible[s] generally protected as personal property," (in Collins's case, the use of a government photocopier to create documents for his amateur ballroom dance activities). Id.

In contrast to § 641's broad wording "any thing of value," § 1163 brings within its coverage only "money, funds, credits, goods, assets, or other property," leading to the conclusion that the statute was intended to encompass only property falling within the common law definition of that term. See United States v. Kehoe, 365 F. Supp. 920, 923 (S.D. Tex. 1973), *rev'd on other grounds*, 516 F.2d 78 (5th Cir. 1975) ("Notwithstanding . . . that 'embezzlement' is a purely statutory rather than a common law offense, the term . . . has acquired a well established connotation which

approaches the sanctity of a common law meaning. It is limited to items of personal property . . . . Where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the United States Supreme Court has held that the general practice is to give that term its common law-meaning." (citations omitted)). The plain language of § 1163, therefore, cannot be construed to encompass real property or a tenant's failure to pay arrears on real property.

The government cites no authority for its contention that one who occupies and pays less than the full amount of rent owed on the premises has converted or committed theft of the property. In addition to directly contradicting the accepted definition of statutory conversion, the proposition contradicts accepted principles of real property law concerning landlords and tenants. See Collins, 56 F.3d at 1419; Romea v. Heiberger & Assocs., 163 F.3d 111, 115-16 (2d Cir. 1998) (finding "that back rent is a debt" and accordingly that landlord must follow procedures prescribed by governing law to cancel the lease and terminate the landlord-tenant relationship); S.D. Codified Laws § 21-16-1 ("An action of forcible entry and detainer, or of detainer only, in maintainable: (4) If a lessee in person or by subtenants . . . fails to pay his rent for three days after the same shall be due[.]"). The Housing Authority retains ownership of the real property and could have effected Big Crow's eviction, had its efforts to do so not been interfered with. The fact that the Housing Authority was powerless to exercise dominion over the unit and to evict Big Crow because of apparent political interference may reflect poorly on tribal governance, but it did not render criminal Big Crow's continued occupation of the residence.

Likewise, Big Crow's refusal to pay the full amount of rent owed did not constitute conversion or theft of the arrears. In United States v. Wilkinson, 124 F.3d 971 (8th Cir. 1997), in which we interpreted 18 U.S.C. § 1163, we defined conversion as "the knowing and unauthorized exercise of dominion over another's property." Wilkinson, 124 F.3d at 977 (citing 18 Am. Jur. 2d Conversion § 30 (1985) ("The unlawful taking of goods out of the possession of the owner with intent to convert

them to the use of the taker is clearly a conversion.")). The unpaid rent cannot be converted by Big Crow because the assets he retains by failing to pay the rent remain his assets and have never become the property of another. See id. (holding that Wilkinson was prosecuted successfully under § 1163 because he "improperly misapplied or converted . . . funds to his own use" that the BIA provided to him as a Management and Technical Assistance Grant); see also United States v. French, 46 F.3d 710, 713 (8th Cir. 1995) (holding that defendant converted mortgaged property in violation of 18 U.S.C. § 658 when he sold to a third party cattle in which the Farmers Home Administration held a security interest); United States v. Archambault, 767 F.2d 402 (8th Cir. 1985).

Although Big Crow knowingly and substantially underpaid the rent on the unit he leased from the Housing Authority, his failure to pay the full amount of rent owed on the leasehold did not constitute criminal conduct proscribed by § 1163. "[O]ur society closed its debtor's prisons long ago." Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1094 (4th Cir. 1993); see also Freeman v. United States, 217 U.S. 539, 544 (1909) ("Statutes relieving from imprisonment for debt were not intended to take away the right to enforce criminal statutes and punish wrongful embezzlements or conversions of money. . . . Such laws are rather intended to prevent the commitment of debtors to prison for liabilities arising upon their contracts.") (citations omitted)).

The judgment is reversed, and the case is remanded to the district court with directions that the indictment be dismissed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-