# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1415

_____

United States of America,         *
                                          *

         Plaintiff - Appellee,     *

                                           * Appeal from the United States
       v.                           * District Court for the Western
                                         * District of Missouri.

Eric K. Lam,                *

                                          *

         Defendant - Appellant.    *
                                          *

_____

Submitted: June 10, 2003
Filed: August 4, 2003

_____

Before MELLOY, HANSEN, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

Eric K. Lam was convicted by a jury of one count of conspiracy to commit bank fraud, 18 U.S.C. § 371, and six counts of bank fraud, 18 U.S.C. § 1344, based on an alleged check-kiting scheme involving three federally insured banks. At the close of the government's case-in-chief, and again in a post-trial motion, Lam moved for judgment of acquittal. The district court[1] denied the motion. Lam appeals,

_____

[1] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

arguing that: (1) the government failed to prove the fraudulent representations essential to bank fraud; and (2) the government failed to prove the identity of Lam as the perpetrator of the charged bank transactions in the substantive fraud counts. We affirm the district court.

I.

"In considering a district court's denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." United States v. Big Crow, 327 F.3d 685, 688 (8th Cir. 2003) (internal quotations omitted). In this case, the government established the following in support of its allegation that Lam and two co-conspirators devised and conducted a check-kiting scheme involving three federally insured banks: First Bank of Missouri, Commerce Bank, and United Missouri Bank.

On October 4, 2000, Lam opened a bank account at each of the three named banks with an initial $100 cash deposit. On October 10, 2000, Lam and his two accomplices began making deposits into and withdrawals from the accounts. They continued to make deposits and cash checks on the accounts until October 17, 2000. Many of the transactions involved "split deposits" in which Lam would present a deposit check for several thousand dollars but ask for a significant portion back in cash.[2] A total of thirty-one checks totaling $37,721.11 were deposited into the three accounts from October 10 to October 16, 2000. Twenty-one of the checks were returned for insufficient funds, totaling $36,848.11. Thus, the net deposit in all the

_____

[2] For example, on October 16, 2000, Lam deposited a check for $2,290 and received $2,000 back in cash.

accounts was $873.  The government's expert concluded that between October 10 and October 17, 2000, Lam received approximately $25,000 from the scheme.

The proof of the check kiting scheme consisted of testimony from bank personnel, and an IRS Special Agent who analyzed the accounts and the bank records of deposits and withdrawals from the accounts.  The testimony and the exhibits showed multiple banking transactions at different branches of the same banks throughout the week of October 10, 2000.  Some of the transactions involved checks written from one Lam account to another or to one of his accomplices, some involved check deposits drawn on closed accounts from several banks, including Wells Fargo, in the name of Minh Nguyen, and others involved traveler's checks purchased with funds from one of Lam's accounts.  Sandra Torrey, a bank teller, specifically identified Lam as the person who conducted a transaction at a branch of the First Bank of Missouri.[3]  Ms. Torrey later alerted police, on October 17, 2000, by which time Lam's account had been frozen, that Lam had just left the branch office after picking up blank deposit slips and unsuccessfully attempting to use a branch ATM. Using the information and vehicle description she provided, police located Lam, with two other men, four blocks away at a branch of the Commerce Bank.  Lam and the two others were arrested, and a pad of blank checks in the name of Minh Nguyen was found in the car.

At the close of the government's case, Lam made a written motion for judgment of acquittal.  Lam claimed that the government had failed to prove that he was the person who executed the scheme to defraud the banks, and that Ms. Torrey's identification to an uncharged transaction was not sufficient to establish his role in

---

[3] The October 12, 2000, transaction about which Ms. Torrey testified was not one of the substantive counts charged in the indictment.

the charged offenses. The district court denied the motion, finding sufficient circumstantial evidence to establish Lam's part in the charged fraud transactions.

Lam subsequently testified on his own behalf, during which he admitted opening the three bank accounts, and depositing checks and traveler's checks into the accounts every day during the week of October 10, 2000. The defense theory of the case was that Lam was an unknowing pawn in a scheme by Heip Vu, one of the men with whom he was arrested on October 17. Lam testified that he believed the checks were valid payment for two diamond rings from his previous marriage that he was selling to Vu for $10,500, and that Vu had instructed him to open three accounts to facilitate faster payment by multiple small checks rather than one large check. According to Lam, Vu told him he could keep the rings as collateral until the payment checks cleared the bank. Lam admitted going to multiple bank branches every day to conduct transactions. He further admitted receiving significantly more cash from the transactions than the $10,500 that he claims Vu owed him for the rings.

Lam was convicted of all charges. In a post-trial motion for judgment of acquittal, Lam renewed his challenge that the government had not properly identified him as the perpetrator of the substantive fraud charges. Lam also argued that the government indicted, and prosecuted him, only under subsection two of 18 U.S.C. § 1344,[4] and failed to prove the false or fraudulent representation or promise required

---

[4] The indictment did not specifically reference either subsection one or two, but rather alleged, generally, a violation of 18 U.S.C. § 1344, which provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice – (1) to defraud a financial institution; or (2) to obtain any of the moneys funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

under that subsection. Lam argued that the government's reliance on subsection one – which would encompass a check-kiting scheme – was a post-hoc justification which violated his due process rights under the Fifth Amendment because he was unaware that the government was proceeding under that theory of prosecution. The district court rejected Lam's contention that the government had changed tack, finding instead that the government had from the beginning alleged, and prosecuted, a § 1344(1) "scheme to defraud" the banks by means of a check kiting scheme.

## II.

Lam's appeal from the denial of his motion for judgment of acquittal challenges the sufficiency of the evidence on all counts. To prevail, Lam "must show that the evidence presented by the government was not sufficient to permit a reasonable jury to find him guilty beyond a reasonable doubt." United States v. Hart, 212 F.3d 1067, 1070-71 (8th Cir. 2000) (citations omitted); see also Big Crow, 327 F.3d at 688 ("We will uphold the conviction unless no reasonable jury could have found the defendant guilty beyond a reasonable doubt.") (internal quotations omitted). After careful review of the record, including the indictment and trial transcript, we conclude that the district court properly denied Lam's motion.

With regard to Lam's argument that the government failed to present sufficient evidence of identity to sustain the bank fraud charges, we agree with the district court that circumstantial evidence in this case was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Lam was the perpetrator of the charged transactions in the substantive fraud counts. Lam's direct testimony proved his participation in many of the charged transactions and circumstantial evidence inferred his involvement as well. Lam argues that the government must directly link Lam to each charged transaction by witness identification, but it is well-settled that a jury is

entitled to consider circumstantial evidence exactly as it would direct evidence. See Lenza v. Wyrick, 665 F.2d 804, 812 (8th Cir. 1981) ("In evaluating the sufficiency of the evidence to sustain the verdict, circumstantial evidence is to be treated no differently than direct evidence.") (citing Holland v. United States, 348 U.S. 121, 140 (1954)).

In his opening appellate brief, Lam opines, "Although circumstantial evidence may support an inference that Mr. Lam was involved in these transactions, the evidence also supports an inference that a person other than Mr. Lam presented such checks." Appellant brief, at 16. This may be true, but it does not support Lam's argument in this case. As we recently re-stated, "[t]he facts and circumstances relied on by the government must be consistent with guilt, but they need not be inconsistent with any other hypothesis, and it is enough to convict if the entire body of evidence is sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." United States v. Chavez, 230 F.3d 1089, 1090 (8th Cir. 2000) (quotations omitted). The evidence in this case, both direct and circumstantial, sufficiently tied Lam to the charged bank fraud transactions, and the district court properly denied, on this basis, Lam's motion for judgment of acquittal.

With regard to Lam's second argument – that the evidence was insufficient to prove the requisite fraudulent representation or promise for bank fraud – we again agree with the district court's resolution of the issue. Lam's argument on this point is somewhat convoluted in that Lam does not appear to contest the sufficiency of the evidence to support a conviction under 18 U.S.C. § 1344(1), which makes it a crime to scheme to defraud a financial institution, including, *inter alia*, through check-kiting schemes. See, e.g., United States v. Whitehead, 176 F.3d 1030, 1041 (8th Cir. 1999) (affirming conviction under § 1344(1) for check-kiting scheme). Rather, Lam argues primarily that he was indicted and prosecuted under 18 U.S.C. § 1344(2), which makes it a crime to obtain money from a financial institution by means of false or

fraudulent representations, and that there was insufficient evidence to establish the requisite fraudulent representations in this case.[5]  Lam concedes that each count of the indictment contains language from both subsections of § 1344.  He contends, however, that the fact that the majority of the indictment language tracks subsection two, combined with the government's extensive trial testimony and evidence regarding false checks, mandates a conclusion that the government was proceeding under subsection two, and that his due process rights were violated by letting the conviction stand on what the government now contends was a subsection one check-kiting scheme to defraud.

We agree with the district court that both the indictment and trial evidenced the government's prosecution of a check-kiting scheme which falls within 18 U.S.C. § 1344(1), and that the evidence supported the jury's conviction on each count.  Review of the indictment in its entirety supports the conclusion that the indicted facts alleged a check-kiting scheme, and hence a violation of § 1344(1), despite the absence of that specific term or the statutory subsection.  Although the indictment includes language from both subsections of the statute, the "manner and means" and "overt acts" set forth in the indictment adequately describe a check-kiting scheme.  Review of the trial transcript demonstrates that the government proceeded on a check-kiting theory at trial as well.  The government discussed check-kiting in both its opening statement and closing arguments, and the special agent's testimony and exhibits were clearly intended to explain to the jury how the defendant used the different accounts in concert to inflate the balances and facilitate the check-kiting scheme.  Because we see

---

[5] "[A] check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.'"  Williams v. United States, 458 U.S. 279, 284 (1982).  Thus, the deposit of checks that are not supported by sufficient funds does not involve the making of a "false or fraudulent representation" as required for conviction under 18 U.S.C. § 1344(2).  See id., at 284-85 (concluding that a check is not a "false statement" for purposes of federal statute criminalizing the making of false statements in loan applications).

nothing inconsistent in the government's conduct throughout the prosecution of this case, Lam cannot establish a due process violation. And because the evidence was more than sufficient to prove a check-kiting scheme, the district court properly rejected Lam's sufficiency challenge.

Accordingly, we affirm the district court's denial of Lam's motion for judgment of acquittal.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.